**In the Matter of HANDY ANDY HOME IMPROVEMENT CENTERS, INC., Debtor–Appellee.**

**Appeal of NATIONAL TERMINALS CORPORATION.**

No. 97–3781.

United States Court of Appeals, Seventh Circuit.

Argued May 21, 1998.

Decided June 24, 1998.

Michael Weininger (argued), Rusty A. Payton, Katz, Randall & Weinberg, Chicago, IL, for Appellant.

John J. Voorhees, Jr. (argued), Lawrence K. Snider, Mayer, Brown & Platt, Chicago, IL, Michael P. Richman, Mayer, Brown & Platt, New York City, for Debtor–Appellee.

Before POSNER, Chief Judge, and COFFEY and EVANS, Circuit Judges.

POSNER, Chief Judge.

We are asked to decide an important question of bankruptcy law that, surprisingly, has never elicited an appellate opinion, even though it has been the subject of a large number of decisions by bankruptcy and district judges—decisions that are on both sides of the question. Compare, e.g., *In re McCrory Corp.*, 210 B.R. 934 (S.D.N.Y.1997); *In re Child World, Inc.*, 161 B.R. 571 (S.D.N.Y. 1993), and *In re Victory Markets, Inc.*, 196 B.R. 6 (Bankr.N.D.N.Y.1996), with, e.g., *In re F & M Distributors, Inc.*, 197 B.R. 829 (Bankr.E.D.Mich.1995), and *In re Krystal Co.*, 194 B.R. 161 (Bankr.E.D.Tenn.1996). Often, after a tenant declares bankruptcy but before he (as debtor in possession) or the trustee in bankruptcy assumes or rejects the lease (as he is entitled to do), the landlord receives a bill for taxes that the lease requires the tenant to reimburse him for. The question is whether the tenant's debt to the landlord for the taxes is entirely a postpetition debt or must be prorated between the prepetition and postpetition period of the tenant's occupancy. The bankruptcy judge, 196 B.R. 87 (Bankr.N.D.Ill.1996), and the district judge ruled that it had to be prorated. The landlord, claiming that the date by which the tenant must pay the bill determines whether the debt is prepetition or postpetition, argues that the entire amount is a postpetition debt. We are being a little

imprecise in speaking of "prepetition" and "postpetition" debt; the dividing line is, as we shall see, not the date on which the petition is filed but the date on which the order for relief is entered. Often these are the same date, but not always (and not here).

Handy Andy leased commercial property in Cook County, Illinois from a predecessor of National Terminals Corporation. The lease went into effect on October 1, 1986, and was to expire ten years later. The lease required the lessee to pay all real estate taxes on the property during its term and provided that if the lease ended during rather than at the end of a tax period, the taxes would be prorated between the parties, so that the lessee would be responsible only for those taxes that had accrued before termination. The taxes were of course billed to National, as the owner of the property, rather than to Handy Andy. The lease provided that National would either transmit the bill to Handy Andy, which would then pay the taxes directly to the collector, or pay the taxes itself and bill Handy Andy for reimbursement, which would be due with the next rental payment due National under the lease. National followed the second course, except that it sometimes gave Handy Andy a little longer time within which to reimburse it.

Cook County bills the taxpayer *after* the period for which the taxes have been assessed. And so the bill for real estate taxes on the leased property for the second installment of 1994 taxes wasn't sent to National until September of the following year. The next month, Handy Andy's creditors filed a bankruptcy petition against Handy Andy under Chapter 11. Two weeks later, National paid the tax bill that it had received from Cook County and invoiced Handy Andy for the amount. Shortly afterward, on November 1, 1995, an order authorizing the bankruptcy case to proceed (an "order for relief," 11 U.S.C. § 303(h)) was entered. The following February, with Handy Andy still in bankruptcy, National received the bill for the first installment of 1995 taxes, paid it, and invoiced Handy Andy. Handy Andy rejected the lease in April.

■ Section 365(d)(3) of the Bankruptcy Code provides that the trustee or (as in this

case) debtor in possession, 11 U.S.C. § 1107(a); *In re Thinking Machines Corp.*, 67 F.3d 1021, 1024 n. 3 (1st Cir.1995), "shall timely perform all the obligations of the debtor ... arising from and after the order for relief under any unexpired lease of non-residential real property, until such lease is assumed or rejected, notwithstanding section 503(b)(1)"; the latter section allows as expenses of administering the debtor's estate "the actual, necessary costs and expenses of preserving the estate." National insists that Handy Andy's obligation to reimburse it for the second installment of the 1994 taxes and the first installment of the 1995 taxes did not arise until the first rental due date after National invoiced Handy Andy, and therefore that Handy Andy is obligated by section 365(d)(3) to pay the taxes. Even if the premise is correct, the conclusion may not follow for the 1994 installment. Remember that the entitlement created by section 365(d)(3) clicks in only when the order for relief is entered. That wasn't until November 1, and under the lease that was the deadline for Handy Andy to reimburse National for the 1994 installment, because it was the date on which the next rental payment was due; so under no interpretation of "obligation" did the obligation arise after the order for relief. Cf. *Swiss Bank Corp. v. Dresser Industries, Inc.*, 141 F.3d 689, 691–92 (7th Cir.1998). But Handy Andy makes nothing of this point, so we won't either. Likewise neither party tries to attach significance to the statutory phrase "arising from" the order for relief as distinct from arising *after* it. We can't figure out what the "from" adds to the "after."

■ The quarrel between the parties is over whether Handy Andy's "obligation" under the lease could arise before Handy Andy was contractually obligated to reimburse National for the taxes that the latter had paid. National says no, and this "billing date" approach is a possible reading of section 365(d)(3), but it is neither inevitable nor sensible. It is true that Handy Andy's obligation to National to pay (or reimburse National for paying) the real estate taxes did not crystallize until the rental due date after the taxes were paid. But since death and taxes are inevitable and Handy Andy's obligation under the lease to pay the taxes was clear, that obligation could realistically be said to have arisen piecemeal every day of 1994 and to have become fixed irrevocably when, the last day of the year having come and gone, the lease was still in force. Had the lease been terminated for one reason or another on January 1, 1995, Handy Andy would have had a definite obligation to reimburse National for the 1994 real estate taxes when those taxes were billed to National. The obligation thus arose, in a perfectly good sense, before the bankruptcy. The obligation to reimburse National for the first installment of the 1995 taxes likewise arose before the bankruptcy.

■ This interpretation is more sensible than National's because it tracks the purpose of giving postpetition creditors a high priority in the distribution of the debtor's estate. The purpose is to enable the debtor to keep going for as long as its current revenues cover its current costs, so that it does not collapse prematurely because of the weight of its existing debt. See *In re Jartran, Inc.*, 732 F.2d 584, 586–88 (7th Cir.1984); *Trustees of Amalgamated Ins. Fund v. McFarlin's, Inc.*, 789 F.2d 98, 101 (2d Cir.1986). In economic terms, the prioritizing of postpetition debt enables the debtor (or trustee) to ignore sunk costs—treat bygones as bygones—and continue operating as long as the debtor's business is yielding a net economic benefit. The purpose is relevant to any borrowing, trade or otherwise, in which the debtor engages after entering bankruptcy. Were the tax collector knocking on Handy Andy's door, threatening to foreclose, and Handy Andy had to borrow money to pay the tax collector, the debt arising from the loan would come within section 503(b)(1). That is not this case. The taxes had been paid, by National. Handy Andy wasn't trying to borrow money from National. What it wanted was the continued occupancy of the leased property until it rejected the lease. To get this benefit it had to pay the full rent under the lease for every day that it continued to occupy the property; section 365(d)(3), changing the prior law (as we are about to see), requires no less. But Handy Andy's debt to National for 1994 and earlier 1995 taxes relates entirely to an earlier period, and is thus no different from its debts to trade creditors for supplies that it bought in

1994 but never paid for. A trade creditor does not, by virtue of continuing to sell to the debtor after the latter has gone into bankruptcy, obtain a priority for what the debtor owes him for goods or services sold to the debtor before the bankruptcy. National is in no different situation by virtue of section 365(d)(3).

Imagine that Handy Andy had vacated the premises the day it received National's bill for tax reimbursement and National had promptly re-leased the premises. Could National have as a matter of economics made the new tenant reimburse it for the past taxes? Not likely. For those taxes conferred no benefit on the new tenant, who would have reimbursed his current landlord for taxes covering the same period. This shows that past taxes really are a sunk cost, and shouldn't affect the current operations of a bankrupt tenant; and so the obligation to pay or reimburse the taxes that accrued prepetition is a pre- rather than postpetition obligation.

The only thing that obscures this conclusion is the broad wording of section 365(d)(3). But it has a history that is illuminating. Until its enactment in 1984, the landlord was in an awkward spot during the interval between the entry of the tenant into bankruptcy and the tenant's decision to assume or reject the unexpired lease. At the same time that the automatic stay would prevent the landlord from evicting the tenant, *Robinson v. Chicago Housing Authority*, 54 F.3d 316, 317–18 (7th Cir.1995); *In re Atlantic Business & Community Corp.*, 901 F.2d 325, 327–28 (3d Cir.1990), the "actual, necessary" provision of section 503(b)(1), at least as interpreted by many courts (we need not decide whether correctly), might prevent the landlord from collecting the rent in full, promptly, and without legal expense. See, e.g., *Diversified Services, Inc. v. Harralson*, 369 F.2d 93 (5th Cir.1966) (per curiam); *In re Appletree Markets Inc.*, 139 B.R. 417, 419 (Bankr.S.D.Tex.1992); *In re Cardinal Export Corp.*, 30 B.R. 682 (Bankr.E.D.N.Y. 1983); see *In re F.A. Potts & Co.*, 137 B.R. 13 (E.D.Pa.1992). This was a problem for all postpetition creditors—section 503(b)(1) is not limited to landlords—but most of the others were dealing voluntarily with a bankrupt and thus knowingly assuming the risk of

not being fully compensated for their services, while the landlord was being forced to deal with his bankrupt tenant on whatever terms the bankruptcy court imposed because he could not evict him. To give relief to landlords, Congress passed section 365(d)(3), which takes them out from under the "actual, necessary" provision of 503(b)(1) and allows them during that awkward postpetition prerejection period to collect the rent fixed in the lease. There is no indication that Congress meant to go any further than to provide a landlord exception to 503(b)(1), and thus no indication that it meant to give landlords favored treatment for any class of prepetition debts.

■ Statutory language like other language should be read in context. *Textron Lycoming Reciprocating Engine Division v. United Automobile, Aerospace & Agricultural Implement Workers*, —— U.S. ——, 118 S.Ct. 1626, 1629, 140 L.Ed.2d 863 (1998); *Sundstrand Corp. v. Commissioner*, 17 F.3d 965, 967 (7th Cir.1994); *Bell Atlantic Tel. Cos. v. FCC*, 131 F.3d 1044, 1047 (D.C.Cir. 1997). The context consists not merely of other sentences but also of the real-world situation to which the language pertains. Here that situation concerned a class of postpetition debts. That is all that Congress was legislating in reference to. When context is disregarded, silliness results. The rule for which National contends would make the rights of creditors turn on the happenstance of the dating of tax bills and the strategic moves of landlords and tenants. Suppose Cook County billed for taxes in advance, as the Internal Revenue Service does, and suppose the tax bill that Cook County sent National in September 1995 was for 1996 taxes. Under National's interpretation of section 365(d)(3), the entire bill would become a prepetition debt if the order for relief in bankruptcy was entered after November 1, since under that interpretation all bills payable before the date of the order are for prepetition debts even if the bill is for the prepayment of services that will be rendered entirely in the postpetition period. We don't see the sense of that. And notice also that if National had transmitted the tax bill to Handy Andy as soon as it received it in September, so that it was payable by October

1, rather than waiting until after Handy Andy entered bankruptcy, the bill would have been for a prepetition debt under National's theory. It may have delayed the transmission of the bill precisely to set the stage for the legal argument that it has made to us. We don't see the sense of encouraging that sort of behavior either.

Affirmed.