In re PETRIE RETAIL, INC.,
et al., Debtors.

The Equitable Life Assurance Society
of the United States, et al.,
Appellants,

v.

Petrie Retail, Inc., et al., Appellees.

Commercial Centers Management,
Inc., Appellant,

v.

Petrie Retail, Inc., et al., Appellees.

Petrie Retail, Inc., et al.,
Cross–Appellants,

v.

The Equitable Life Assurance Society
of the United States, et al.,
Cross–Appellees.

Petrie Retail, Inc., et al.,
Cross–Appellants,

v.

Commercial Centers Management,
Inc., Cross–Appellees.

Nos. 97 Civ. 4249(JES) to
97 CIV. 4252(JES).

United States District Court,
S.D. New York.

May 6, 1999.

Kelley Drye & Warren LLP, New York City, W. Christian Drewes, James S. Carr, Matthew A. Doheny, of counsel, for The Equitable Life Assurance Society of the United States.

Richard A. Lee Law Office, San Juan, Puerto Rico, Richard A. Lee, of counsel, for Commercial Centers Management, Inc.

Fulbright & Jaworski, New York City, William J. Rochelle, of counsel, for Commercial Centers Management, Inc.

Wilkie Farr & Gallagher, New York City, Brian E. O'Connor, Annette Haselhoff, of counsel, for Debtors and Debtors in Possession.

Hahn & Hessen LLP, New York City, Mark S. Indelicato, Donna J. Hass, of counsel, for the Official Committee of Unsecured Creditors.

## MEMORANDUM OPINION AND ORDER

SPRIZZO, District Judge.

The above-captioned appeals and cross-appeals are taken from orders of the United States Bankruptcy Court for the Southern District of New York, Arthur J. Gonzalez, J., dated April 22, 1997, and April 30, 1997, denying, respectively, a motion by The Equitable Life Assurance Society of the United States and related entities (collectively "Equitable") seeking immediate payment by the above-captioned debtors and debtors-in-possession ("Debtors") of the entire unpaid balance of post-petition percentage rent owing under a lease of non-residential real property pursuant to 11 U.S.C. § 365(d)(3) and a motion by Commercial Centers Management, Inc., ("CCM") seeking similar relief. Equitable and CCM argue that the court below erred by prorating certain sums that became due under the leases at issue subsequent to the date of Debtors' petitions for bankruptcy in Chapter 11 and denying the Creditors recovery of the full amounts owing under the leases. Debtors cross-appeal, arguing that the court improperly calculated the amount of rent to be prorated over the pre-petition portion of each lease term based upon the volume of sales of each month of the lease year. The Official Committee of Unsecured Creditors ("Unsecured Creditors") have also filed a brief in opposition to Equitable's and CCM's appeals and in support of the Debtors' cross-appeals. For the reasons that follow, this Court reverses the April 22, 1997, and April 30, 1997, orders of the court below and remands the instant actions for further proceedings consistent with the Court's Memorandum Opinion and Order.

## BACKGROUND

On October 12, 1995 ("Petition Date"), Petrie Retail, Inc., and one hundred seventy-nine of its direct and indirect subsidiaries, each filed voluntary petitions for reorganization under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. ("Bankruptcy Code"). At issue in these appeals is whether certain sums owing by Debtors under non-residential real property leases are to be treated as prepetition unsecured claims or instead given priority as post-petition, pre-rejection rent payments under section 365(d)(3) of the Bankruptcy Code.

The leases at issue are for retail space in Michigan and Puerto Rico. Debtors entered into a lease with Equitable in 1994 for certain retail space referred to as store number 203 (the "Equitable lease"). Under this lease, Debtors agreed to pay Equitable a fixed annual rent of $450,000.00 payable in equal monthly installments. In addition, Debtors also agreed to pay real estate taxes and assessments and various other charges.

The lease also imposed upon Debtors the obligation to pay additional rent calculated on the basis of the gross sales by the retail establishment occupying the leased premises. In each lease year that gross sales exceeded a minimum threshold, designated in the lease as the "breakpoint," Debtors agreed to pay Equitable a percentage of all gross sales in excess of the breakpoint amount. This rent, termed "percentage rent," is defined as twelve percent of gross sales in excess of $5,000,000. Gross sales are calculated as total sales for the lease year less returns and certain setoffs allowed by the lease. The first lease year, the year in which Debtors petitioned for reorganization, is defined as

running from the commencement of the lease on November 4, 1994, to January 31, 1996. The lease obligates Debtors to pay any such percentage rent forty-five days after the end of the lease year.

In the first lease year, Debtors reached the breakpoint in December 1995, two months after the Petition Date. Under the lease, Debtors were obligated to pay Equitable twelve percent of all gross sales made from the date that Debtors reached the breakpoint until January 31, 1996, the end of the lease year. However, Debtors refused to pay this amount, arguing that the percentage rent, although calculated solely as a percentage of sales made after the Petition Date, should be treated in part as a prepetition claim. On this basis, Debtors prorated the percentage rent over the entire year and paid Equitable only a fraction of the total percentage rent due.

Although the record on appeal does not include a copy of the leases entered into by Debtors and CCM or a clear statement of the terms of those leases, it appears from the parties' briefs to the court below that Debtors and CCM entered into multiple leases for retail space in Puerto Rico. These leases apparently included provisions similar to the Equitable lease, requiring Debtors to pay percentage rent calculated as a percentage of sales exceeding the sales breakpoint for each retail space. CCM seeks percentage rent owing under the leases for stores number 719 and 803.

Both Equitable and CCM brought before the bankruptcy court motions to compel payment by the debtors of the full amounts of percentage rent owing under the relevant leases. They argued that, in order to determine whether the percentage rent owed by Debtors constituted a post-petition obligation within the meaning of section 365(d)(3), the court should focus upon the date on which the relevant lease provisions required the debtors to pay the percentage rent. Because payment of the percentage rent under each lease at issue was not due until after the Petition Date,

Equitable and CCM argued that the Debtors must pay all percentage rent still owing. Both the Debtors and the Unsecured Creditors argued, however, that the court should prorate the percentage rent over the entire lease year, treating a portion of the percentage rent under each lease as an unsecured pre-petition claim.

The court below agreed with the Debtors that the percentage rent should be prorated over the lease year, with a portion of the percentage rent being treated as a pre-petition claim. The court prorated the rent by multiplying the total amount of percentage rent due for the lease year by a ratio, the numerator of which was the aggregate amount of post-petition sales and the denominator of which was the total sales for the lease year, with the product as the amount owing as post-petition rent under section 365(d)(3).

The instant appeals and cross-appeals followed. Equitable and CCM argue on appeal that the bankruptcy court erred by prorating the percentage rent over each month of the lease year, rather than treating the entire percentage rent owing as post-petition obligations immediately payable in full under section 365(d)(3). They argue that this Court, in determining how to characterize the percentage rent, should treat as conclusive the date on which the leases obligated the Debtors to pay the percentage rent due and that, since the percentage rent became payable after the Petition Date, the clear language of the Bankruptcy Code requires this Court to treat the percentage rent as obligations arising post-petition. The parties have termed this approach the "billing date" method.

In the alternative, Equitable argues that, should this Court decide that the billing date is not determinative, the Court should instead focus upon when the Debtors' retail establishments' sales exceeded the sales breakpoints. Arguing that the obligation to pay percentage rent arises

under section 365(d)(3) on the date such sales in excess of the breakpoint are made, Equitable argues that the Court should treat as a post-petition obligation the percentage rent owing on all sales made after the Petition Date and should treat as an obligation arising pre-petition the percentage rent owing on any sales made before the Petition Date. The parties have denominated this approach the "sales breakpoint" method.

The Debtors and the Unsecured Creditors also challenge on appeal the bankruptcy court's method of prorating the percentage rent. Instead of the "sales volume" method adopted below, they argue that the bankruptcy court should have adopted the "calendar" method, under which percentage rent is prorated by multiplying the total percentage rent due for the lease year by a ratio, the numerator of which is the total number of days subsequent to the Petition Date during the lease year, and the denominator of which is the total number of days in the lease year.

For the reasons that follow, the Court concludes that the sales breakpoint method advanced by Equitable is the method mandated by the plain meaning of section 365(d)(3).

## DISCUSSION

■ This Court has jurisdiction to hear these appeals pursuant to 28 U.S.C. § 158. Because these appeals do not present any factual issues and involve only the interpretation of statute, this Court reviews the decision of the bankruptcy court de novo. *See In re Ionosphere Clubs, Inc.,* 922 F.2d 984, 988 (2d Cir.1990).

Section 365(d)(3) was enacted in 1984 as part of the Bankruptcy Amendments and Federal Judgeship Act. It states in relevant part that

> The trustee shall timely perform all the obligations of the debtor, except those specified in section 365(b)(2), arising from and after the order for relief under any unexpired lease of nonresidential

real property, until such lease is assumed or rejected, notwithstanding section 503(b)(1) of this title....

11 U.S.C. § 365(d)(3).

This amendment responded to a problem formerly encountered by landlords during the period between a tenant's bankruptcy petition and assumption or rejection of a lease by the trustee. During that period, the tenant-debtor could continue to occupy the building, thus preventing the landlord from securing a new tenant, and the landlord could collect only such rent for the debtor's continued occupancy as approved by the bankruptcy court under section 503(b)(1). In at least some cases, landlords were unable to collect their rent in full and faced both delay and legal expense in attempting to recover the rent owed. *See, e.g., Diversified Services, Inc. v. Harralson,* 369 F.2d 93 (5th Cir.1966) (per curiam); *In re Appletree Markets Inc.,* 139 B.R. 417, 419 (Bankr.S.D.Tex. 1992); *In re Cardinal Export Corp.,* 30 B.R. 682 (Bankr.E.D.N.Y.1983). Section 365(d)(3) addresses this problem by entitling the landlord to collect the full rent fixed in the lease for the period between petition and rejection.

■ By its language, section 365(d)(3) applies only to "obligations ... arising from and after the order for relief...." Thus, the instant appeals turn upon when the Debtors' obligation to pay the percentage rent arose under the leases at issue. Equitable and CCM's argument that an obligation arises when it becomes payable offers the Court an appealingly simply bright-line rule that would turn solely upon the billing date for an obligation. However, this approach has been squarely rejected by the only circuit court decision to construe section 365(d)(3). In *In re Handy Andy Home Improvement Centers, Inc.,* 144 F.3d 1125 (7th Cir.1998), Chief Judge Posner, writing for an unanimous panel, rejected the billing date approach as a formalistic interpretation divorced from the statute's purpose and context that "would make the rights of creditors turn

on the happenstance of the dating of [ ] bills and the strategic moves of landlords and tenants." *Handy Andy*, 144 F.3d at 1128. Chief Judge Posner instructed that courts must, when determining whether an obligation arises post-petition, consider the purpose under the Bankruptcy Code of giving post-petition creditors priority in the distribution of the debtor's estate:

> The purpose is to enable the debtor to keep going for as long as its current revenues cover its current costs, so that it does not collapse prematurely because of the weight of its existing debt. In economic terms, the prioritizing of post-petition debt enables the debtor (or trustee) to ignore sunk costs—treat bygones as bygones—and continue operating as long as the debtor's business is yielding a net economic benefit.

*Id.* at 1127.

The billing date method clearly conflicts with this statutory purpose by allowing a landlord to impose upon a debtor obligations arising from the debtor's pre-petition occupancy and use of the leased premises, rather than the debtor's post-petition efforts to continue operating its business. Because this construction of the section's language would work such clear mischief to the Bankruptcy Code's purpose, and because this construction is not compelled by the text of section 365(d)(3), this Court declines to adopt the billing date method to determine whether an obligation arises post-petition.

■ The Court also rejects both the sales volume method adopted by the court below and the calendar method advanced by the Debtors and Unsecured Creditors on appeal, for neither method bears any logical relationship to the text of the statute. As noted above, the text of section 365(d)(3) requires the Court to determine when the tenant's obligation to pay percentage rent arises. Neither method even attempts to identify this point, instead directing the court to make an equitable proration of the percentage rent over the entire lease year.

The Court acknowledges that the calendar method has been adopted by some courts, including the Seventh Circuit in the *Handy Andy* decision discussed above, for the proration of real estate taxes. *See Handy Andy*, 144 F.3d at 1127. However, a tenant's obligation under a lease to pay real property taxes assessed on the leased premises is readily distinguishable from the payment of percentage rent. Unlike percentage rent, the tenant's obligation to pay taxes ordinarily will not be contingent upon an uncertain future event, such as meeting a sales breakpoint. Rather, both the obligation to pay taxes and the amount of those taxes will usually be certain from the first day of the lease year, so that the tenant's obligation to pay these taxes can be said to have arisen incrementally over each day of the lease year. *See id.* Proration of such fixed obligations by the calendar method respects the text of the statute by allocating the tenant's obligation between the pre-petition and post-petition periods based upon a reasonable determination of the date on which the obligation arose. There is, however, no such logical basis for proration of contingent obligations such as percentage rent, which can be said to arise only when the tenant exceeds the breakpoint and its obligation to pay percentage rent becomes certain.

The only construction of section 365(d)(3) consistent with both the section's language and purpose is the sales breakpoint approach. As required by the statute's text, this approach clearly identifies the point at which the obligation to pay percentage rent arises, which under this approach is the date on which the tenant's sales exceed the annual breakpoint. At that point, the tenant is clearly obligated to pay percentage rent on all sales made in the remainder of the lease year. Where the tenant surpasses the breakpoint after the petition date, the percentage rent will be calculated as a percentage only of sales made post-petition, and thus the entire percentage rent may be properly characterized as an obligation arising from the

debtor's post-petition business activities. Where the tenant reaches the sales break-point before the petition date, only that portion of the percentage rent arising from post-petition sales may be properly recovered as a post-petition obligation under section 365(d)(3). This approach advances the Bankruptcy Code's policy of giving priority to those obligations incurred as a result of the debtor's continuation of its business activities after the petition date, because the percentage rent will be recoverable under section 365(d)(3) only where the debtor continues its retail operations from the leased premises subsequent to the petition date.

In the instant case, Debtors' store number 203 reached the breakpoint subsequent to the Petition Date. Thus, all percentage rent owing under the lease is properly recoverable by Equitable under section 365(d)(3), and the court below erred in denial of Equitable's motion to compel payment of the percentage rent. With respect to CCM's claims for percentage rent, however, it appears from the record that store number 719 exceeded the breakpoint prior to the Petition Date and, thus, that only the percentage rent owing from sales subsequent to the Petition Date may be recovered by CCM under section 365(d)(3). There is no indication in the record when store number 803 exceeded the breakpoint under its lease. To the extent that store number 803 continued sales subsequent to the Petition Date, at least some portion of the percentage rent owing to CCM under the lease for store number 803 is also recoverable under section 365(d)(3). Therefore, the court below also erred in denying CCM's motion to compel payment of the percentage rent. This Court remands these appeals to the bankruptcy court for specific findings on the volume of sales at the stores in issue both before and after the Petition Date and for calculation of the percentage rent owing under the leases at issue.

## CONCLUSION

For the reasons set forth above, the Court reverses the bankruptcy court's denial by orders dated April 22, 1997, and April 30, 1997, of the motions by Equitable and CCM, respectively, to compel payment by Debtors of the percentage rent owing under the leases at issue. The Court remands these actions for further proceedings consistent with this Memorandum Opinion and Order.

It is **SO ORDERED.**