In re MONTGOMERY WARD
HOLDING CORP., et al.,
Debtors.

CenterPoint Properties
Trust, Appellant,

v.

Montgomery Ward Holding
Corp. et al., Appellees.

No. CIV. A. 98–338–JJF.

United States District Court,
D. Delaware.

Nov. 15, 1999.

Joanne B. Wills, and David S. Eagle, Klehr, Harrison, Harvey, Branzburg & Ellers, Wilmington DE. Of Counsel: J. Mark Fisher, and William Macy Aguiar, Schiff Hardin & Waite, Chicago, IL, for Appellant.

Thomas L. Ambro, and Daniel DeFrancheschi, Richards, Layton & Finger, Wilmington DE. Of Counsel: David S. Kurtz, Richard A. Chesley, and Jeffrey W. Linstrom, Jones, Day, Reavis & Pogue, Chicago, IL, for Appellees.

## *OPINION*

FARNAN, Chief Judge.

Presently before the Court is an appeal by CenterPoint Properties Trust ("CenterPoint") from the April 6, 1998 Order (the "Order") of the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") denying CenterPoint's Motion to Compel Performance of Lease Pursuant to 11 U.S.C. § 365(d)(3). For the reasons discussed, the decision of the Bankruptcy Court will be affirmed.

## BACKGROUND

### I. Statement of Facts

On September 7, 1995, Montgomery Ward & Co., Inc. (the "Debtor") and CenterPoint executed an Industrial Building Lease (the "Lease") pursuant to which the Debtor sold and then leased back to CenterPoint a warehouse distribution facility located in Franklin Park, Illinois (the "Leased Premises"). Article VI of the Lease pertains to the Debtor's obligations with respect to the reimbursement of real property taxes assessed against the Leased Premises. Section 6.1 of the Lease provides, in pertinent part, that:

[u]pon receipt of an invoice from the Landlord, Tenant further agrees to pay before any fine, penalty, interest or cost may be added thereto for the nonpayment thereof, as Additional Rent for the Premises, all Taxes ... levied, assessed or imposed upon the Premises or any party thereof accruing during the Term of this Lease, notwithstanding that such Taxes may not be due and payable until after the expiration of the Term of this Lease; provided, however, that the Taxes levied against the Premises shall be prorated between Landlord and Tenant for the first year of the Initial Term hereof as of the Commencement Date, and as of the date of expiration of the Term of this Lease for the last year of said Term....

Lease at § 6.1. In order to secure the Debtor's reimbursement obligation for the real property taxes owed through the expiration of the Lease, Section 6.3 of the Lease provides, in pertinent part:

[a]s security for [Debtor's] obligation to pay for Taxes assessed in 1996 and 1997, unless the same were otherwise paid by [Debtor] prior to the expiration of the Term, [Debtor] agrees to deposit with Landlord, or such other entity as Landlord may designate, no later than thirty (30) days prior to the expiration of the Term an amount equal to one hundred percent (100%) of the most recent ascertainable Taxes.... [Debtor's] payment of the deposit shall be credited against the Taxes due.

Lease at § 6.3 By its terms, the expiration date of the Lease was September 1, 1997.

On July 7, 1997 (the "Petition Date"), the Debtor filed its voluntary petition for relief under Chapter 11 of the Bankruptcy Code. Pursuant to Sections 1107 and 1108 of the Bankruptcy Code, the Debtor continues to operate its business and manage its properties as a debtor-in-possession.

On July 11, 1997, four days after the Petition Date, CenterPoint issued three invoices to the Debtor. The first invoice was for $320,404.40 and related to the first installment of 1996 real estate taxes, which were payable in 1997. The second invoice was for $320,569.60 and reflected Center-

Point's estimate for the second installment of 1996 real estate taxes based on the most recent assessed valuation of the Leased Premises.[1] The third invoice was for $426,729.87 and related to the security deposit contemplated by Section 6.3 of the Lease.

On August 12, 1998, the Debtor paid CenterPoint the sum of $96,584.95, reflecting the prorated portion of the estimated 1997 real estate taxes attributable to the post-petition period, i.e. July 8, 1997 through September 1, 1997, the expiration date of the Lease. The Debtor has not paid any other amounts that were the subject of the July 11, 1997 invoices. Prior to the expiration date of the Lease, the Debtor neither assumed nor rejected the Lease.

On September 15, 1997, CenterPoint filed its Motion to Compel Performance of Lease Pursuant to 11 U.S.C. § 365(d)(3), seeking an order compelling the Debtor to pay $1,082,182.04 for the 1996 real estate taxes and the 1997 real estate tax deposit and seeking its costs and legal fees incurred in bringing the Motion. The Debtor filed an Objection on October 17, 1997 on the ground that the District of Delaware has adopted the majority rule mandating the proration of lease obligations into pre- and post-petition obligations. On March 5, 1998, CenterPoint filed its Reply, and on April 12, 1998 the Debtor filed a Surreply with leave of the Bankruptcy Court.

## II. The Bankruptcy Court's Decision

In a Memorandum Opinion and Order dated April 6, 1998, the Bankruptcy Court denied CenterPoint's Motion To Compel Performance Of Lease Pursuant To 11 U.S.C. § 365(d)(3). Recognizing that there is "a split of authority" regarding the application of Section 365(d)(3) to the real estate tax liability issued raised by CenterPoint's Motion, the Bankruptcy Court adhered to the majority view which

interprets Section 365(d)(3) to require the proration of real estate taxes. *In re Montgomery Ward Holding Corp.*, No. 97–1409, mem. op. at 5 (Bankr.Del. Apr. 6, 1998) (Walsh, J.). Stated another way, the Bankruptcy Court held that a Debtor is required to reimburse a landlord only for those taxes that accrue post-petition, regardless of the actual billing date. As for taxes accruing pre-petition, the Bankruptcy Court concluded that a landlord must "stand in line" with other general unsecured creditors. Finding CenterPoint's arguments insufficient to justify a departure from prior decisions in the District of Delaware, which have also adopted the majority view, the Bankruptcy Court applied the proration interpretation of Section 365(d)(3) to the Debtor and concluded that:

> the Debtor performed its Lease obligation in accordance with Code § 365(d)(3) when it deposited $96,585 on August 12, 1997 for the estimated real estate taxes accruing from and after July 7, 1997. To the extent the Landlord's invoices demand payment for real estate taxes accruing before July 7, 1997, they will be treated as prepetition claims, not Code § 365(d)(3) obligations.

*Id.* at 7–8.

## DISCUSSION

### I. Jurisdiction and Standard of Review

 Under 28 U.S.C. § 158(a), this Court has jurisdiction to adjudicate appeals from final judgments, orders and decrees of bankruptcy judges. Pursuant to Federal Rule of Bankruptcy Procedure 8013, the Court "may affirm, modify, or reverse a bankruptcy judge's judgment, order or decree or remand with instructions for further proceedings." Fed. R. Bankr.P. 8013. In reviewing a case on appeal, the bankruptcy court's factual determinations are subject to deference and

---

1. Subsequently, the Treasurer of Cook County, Illinois issued a bill in the amount of $335,047.77 for the second installment of the 1996 real estate taxes. CenterPoint has paid both installments for the 1996 real estate taxes, for a total of $655,452.17.

shall not be set aside unless clearly erroneous. *Id.; see In re Gutpelet,* 137 F.3d 748, 750 (3d Cir.1998). However, a bankruptcy court's conclusions of law are subject to plenary review and are considered de novo by the reviewing court. *Meespierson, Inc. v. Strategic Telecom, Inc.,* 202 B.R. 845, 847 (D.Del.1996).

## II. Interpretation of Section 365(d)(3)

The sole issue presented in this appeal is whether the Bankruptcy Court erred in interpreting Section 365(d)(3) to require the proration of real estate property taxes due under an unexpired real property lease. In pertinent part, Section 365(d)(3) provides that:

> The trustee shall timely perform all the obligations of the debtor, except those specified in section 365(b)(2), arising from and after the order for relief under any unexpired lease of nonresidential real property, until such lease is assumed or rejected, notwithstanding section 503(b)(1) of this title.

11 U.S.C. § 365(d)(3).

CenterPoint argues that the "plain meaning" of this statute requires the Debtor to reimburse CenterPoint based on when these obligations arise under the Lease. However, the fact that there is a split among courts and commentators as to the interpretation of Section 365(d)(3) persuades this Court that the meaning of Section 365(d)(3) is not plain and unambiguous. *See e.g. National Terminals Corp. v. Handy Andy Home Improvement Ctrs., Inc.* 222 B.R. 149, 153 (N.D.Ill.1997), *aff'd* 144 F.3d 1125 (7th Cir.1998); *In re McCrory,* 210 B.R. 934, 937 (S.D.N.Y. 1997); *In re Best Prods. Co.,* 206 B.R. 404,. 407 (Bankr.E.D.Va.1997); Joshua Fruchter, *To Bind or Not to Bind—Bankruptcy Code § 365(d)(3): Statutory Minefield,* 68 Am. Bankr.L.J. 437, 442 (recognizing that "ambiguities in § 365(d)(3) abound").

▮ In construing the meaning of an ambiguous statute, a court may consider the legislative history of the statute, as well as policy considerations. *See National Terminals Corp.,* 222 B.R. at 155. Where the Bankruptcy Code is in issue, the United States Supreme Court has cautioned courts to be "reluctant to accept arguments that would interpret the Code, however vague the particular language . . . might be, to effect a major change in pre-Code practice that is not the subject of at least some discussion in the legislative history." *Dewsnup v. Timm,* 502 U.S. 410, 419, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992).

Adhering to the proration approach, the district court in *Handy Andy* reasoned:

> While legislative history reveals that Congress intended to provide landlords with current payments for current services, Congress did not specifically address whether obligations under the lease should be prorated. Because legislative history is silent on this point, the court joins the majority in adhering to the longstanding practice of prorating real estate taxes during the post-petition, pre-rejection period.

222 B.R. at 156. Affirming the district court's approach and becoming the first circuit court to address this issue, the Court of Appeals for the Seventh Circuit acknowledged that the " 'billing date' approach is a possible reading of section 365(d)(3)," but stated that this approach "is neither inevitable nor sensible." 144 F.3d at 1127. Joining the majority of district and bankruptcy courts who have adopted the proration approach to Section 365(d)(3), the Seventh Circuit emphasized both pre-Code practice and the "real-world situation to which the language of [Section 365(d)(3) ] pertains." *Id.* at 1128. In particular, the Seventh Circuit recognized that the billing date approach "would make the rights of creditors turn on the happenstance of the dating of tax bills and the strategic moves of landlords and tenants." *Id.* Indeed, as the district court in *Handy Andy* aptly observed, the billing date approach could potentially provide the tenant with a means of avoiding the obligation to

pay real estate taxes completely under 365(d)(3):

> In cases where the tenant files a voluntary petition for relief, the tenant could file the petition after the billing date to avoid paying real estate taxes under 365(d)(3). The billing date approach could potentially leave the landlord without any payment for the services provided during the post-petition, pre-rejection period. This result is one that Congress specifically intended to remedy by passing the amendments.

222 B.R. at 156.

Though not binding precedent on this Court, the Court finds the rationale espoused by the district court and affirmed by the Seventh Circuit on appeal in *Handy Andy* to be persuasive. The Court finds this rationale particularly compelling in light of the approach taken by the Court of Appeals for the Third Circuit regarding tax liability. In *West Virginia Dep't of Tax & Revenue v. IRS (In re Columbia Gas Transmission )*, the Third Circuit recognized that "a tax liability is generally 'incurred on the date it accrues, not on the date of the assessment or the date on which it is payable.'" *West Virginia Dep't of Tax & Revenue v. IRS (In re Columbia Gas Transmission )*, 37 F.3d 982, 984 (3d Cir.1994) (citations omitted). Relying in part on *Columbia Gas*, courts in this district have consistently interpreted Section 365(d)(3) to require proration in accord with the majority view. *In re Levitz Furniture, Inc.*, No. 97–1842–JJF (D.Del. Mar. 5, 1998); *SCS Co. v. Peter J. Schmitt Co., Inc.*, No. 94–125–RRM (D.Del. May 15, 1995).

Addressing the *Levitz* and *SCS* decisions, CenterPoint argues that these cases were erroneously decided because their reliance on *Columbia Gas* was misplaced. According to CenterPoint *Columbia Gas* was a case under Section 503(b)(1) involving how much of a direct tax claim against the property-owning debtor was entitled to priority as an administrative claim. No lease was involved in *Colum-*

*bia Gas,* and therefore, CenterPoint contends that *Columbia Gas* did not consider the reimbursement obligation of the tenant or Section 365(d)(3), which controls that obligation. While the Court acknowledges that *Columbia Gas* is not directly on point, the Court finds the Third Circuit's comments concerning tax liability to be both instructive and indicative of the Third Circuit's likely approach to this issue. Accordingly, the Court cannot conclude that *Levitz* or *SCS* were erroneously decided, because they relied in part on the Third Circuit's general comments concerning tax liability in *Columbia Gas.*

Second, CenterPoint suggests that "a central distinction" in this case is that CenterPoint, and not the Debtor, incurs the tax liability to the taxing authority. According to CenterPoint, the Debtor's liability to CenterPoint is purely contractual and thus, controlled by the terms of the Lease. Addressing this issue expressly, the district court in *Handy Andy* reasoned:

> [b]ecause real estate taxes generally accrue against the property on a daily basis, the accrual theory should be applied consistently despite who the tenant is obligated to pay. The plain language of Section 365(d)(3) and the legislative history do not support such a distinction.

222 B.R. at 156. Recognizing that the parties to a lease may include terms in the lease to change the Section 365(d)(3) obligation to pay the prorated portion of real estate taxed ruing the post-petition, pre-rejection period, the court further stated that it would not "assume this is the case unless the parties clearly express this intent in the terms of the lease." *Id.* at 157. The Court agrees with the *Handy Andy* court's approach to this issue. Indeed, the Court can find no support in the legislative history or in pre-Code practice suggesting that the proration theory should be applied differently depending on who the tenant/debtor is obligated to pay. Further, given the pre-Code practice of proration, the Court finds it reasonable to assume that the parties to a lease agree to the proration of real estate taxes, unless the

lease contains a clear statement to the contrary.

In this case, the Court has reviewed the applicable provisions of the Lease to determine whether the Lease evidences an intent of the parties to avoid proration. Section 6.1 of the Lease expressly provides that the real estate taxes levied against the premises "shall be prorated between the Landlord and Tenant" for the first and last years of the Lease. Thus, the Court concludes that the Lease evidences an acknowledgment by CenterPoint and the Debtor that real property taxes accrue against the property on a daily basis throughout the term, rather than on the date the tax bill is issued. Accordingly, the Court concludes that the Lease in this case supports, rather than contradicts, the proration approach to tax liability.

■ Given the express reference to proration of taxes in the Lease and the Third Circuit's general approach to tax liability, the Court concludes that proration is appropriate in this case. Thus, the Court declines to depart from the position embraced by the majority of courts, including this Court, that Section 365(d)(3) requires proration of real estate taxes.

■ Applying the proration approach to this case, the Court concludes that the Bankruptcy Court correctly concluded that the Debtor satisfied its obligation under Section 365(d)(3) to CenterPoint when it deposited $96,585 on August 12, 1997, for the estimated real estate taxes accruing from and after the Petition Date. Accordingly, the decision set forth in the Bankruptcy Court's April 6, 1998 Order denying CenterPoint's Motion To Compel Performance Of Lease Pursuant To 11 U.S.C. § 365(d)(3) will be affirmed.

## CONCLUSION

For the reasons discussed the April 6, 1998 Order of the Bankruptcy Court will be affirmed.