**In re MONTGOMERY WARD, LLC, et al., Debtors.**

**Montgomery Ward, LLC, Appellant,**

**v.**

**Western Land Props., Appellee.**

**Bankruptcy No. 00–4667 RTL.
CIV.A.02–368–JJF.**

United States District Court,
D. Delaware.

March 28, 2003.

Robert J. Dehney, Esquire, Derek C. Abbott, Esquire, Donna L. Harris, Esquire and Thomas W. Briggs, Esquire of Morris, Nichols, Arsht & Tunnell, Wilmington, Delaware. Of Counsel: Kelley M. Griesmer, Esquire of Jones, Day, Reavis & Pogue, Columbus, Ohio, for Appellant.

Edward A. Tarlov, Esquire, William D. Sullivan, Esquire, and Charles J. Brown, III, Esquire of Elzufon, Austin, Reardon, Tarlov & Mondell, P.A., Wilmington, DE, for Appellee.

## *MEMORANDUM OPINION*

FARNAN, District Judge.

Before the Court is an appeal by Montgomery Ward, LLC and its affiliates (collectively, the "Debtors") from the Order of the United States Bankruptcy Court for the District of Delaware entered on April 17, 2002, granting the Motion To Compel Payment Of Post–Petition Lease Obligations And Administrative Expenses Filed By Western Land Properties ("Western"). By their appeal, the Debtors contend that the Bankruptcy Court erred in compelling the Debtors to pay, as post-petition administrative rent expenses, certain real property taxes and an insurance premium that the Debtors contend arose in or were otherwise attributable to the pre-petition period. For the reasons set forth below, the Court will affirm the April 17, 2002 Order of the Bankruptcy Court.

## I. The Parties' Contentions

The issue in this case centers on the question of when certain payment obligations arose under the lease between the Debtors and Western, and whether the Bankruptcy Court correctly applied the billing date approach set forth in *Centerpoint Properties v. Montgomery Ward Holding Corp.*, 268 F.3d 205 (3d Cir.2001)

to resolve this question. By their appeal, the Debtors contend that the Bankruptcy Court erred in requiring them to make an administrative expense payment for: (1) the first installment of 2000–2001 real property taxes related to the period from July 1, 2000 until December 31, 2000 (the "First Installment"); (2) the one-time payment for the unsecured real property taxes separately billed for the period July 1, 2000 to June 30, 2001 (the "Unsecured Taxes"); and (3) the 2000 property insurance premium (the "Premium"). According to the Debtors, these obligations arose entirely, or to a large extent, during the pre-petition period, even though Western did not bill the Debtors for these expenses until after December 28, 2000, the date on which the Debtors filed their Chapter 11 cases (the "Petition Date"). Because these expenses arose pre-petition, the Debtors contend that they should not be payable as a post-petition administrative rent expense and should be governed by the proration approach instead of the *Centerpoint* billing date approach. In addition, the Debtors contend that the facts of *Centerpoint* are distinguishable from the instant case rendering the *Centerpoint* billing date approach inapplicable.

In response, Western contends that the Bankruptcy Court correctly applied the billing date approach set forth in *Centerpoint*. Western acknowledges that it billed the Debtors for the sums due following the Petition Date; however, Western also contends that the Debtors have failed to allege that Western's billing practice was any different than the billing practice it had engaged in during the ten previous years that the lease was in effect. In addition, Western contends that the lease provisions at issue make it clear that the Debtors' obligation to pay these charges only arose upon receipt of an invoice from the Landlord for the charges. Thus, Western urges the Court to reject the Debtors' contention that the First Installment, Unsecured Taxes and Premium arose pre-petition simply because Western could have submitted the bills for those charges prior to the Petition Date.

## II. Standard of Review

The Court has jurisdiction to hear an appeal from the Bankruptcy Court pursuant to 28 U.S.C. § 158(a). In undertaking a review of the issues on appeal, the Court applies a clearly erroneous standard to the Bankruptcy Court's findings of fact and a plenary standard to its legal conclusions. *See Am. Flint Glass Workers Union v. Anchor Resolution Corp.*, 197 F.3d 76, 80 (3d Cir.1999). With mixed questions of law and fact, the Court must accept the Bankruptcy Court's finding of "historical or narrative facts unless clearly erroneous, but exercise[s] 'plenary review of the trial court's choice and interpretation of legal precepts and its application of those precepts to the historical facts.'" *Mellon Bank, N.A. v. Metro Communications, Inc.*, 945 F.2d 635, 642 (3d Cir.1991) (citing *Universal Minerals, Inc. v. C.A. Hughes & Co.*, 669 F.2d 98, 101–02 (3d Cir.1981)). The appellate responsibilities of the Court are further understood by the jurisdiction exercised by the United States Court of Appeals for the Third Circuit, which focuses and reviews the Bankruptcy Court decision on a *de novo* basis in the first instance. *In re Telegroup*, 281 F.3d 133, 136 (3d Cir.2002).

## III. DISCUSSION

After reviewing the conclusions of the Bankruptcy Court under a plenary standard of review, the Court concludes that the Bankruptcy Court did not err in its application of the *Centerpoint* billing date approach. Interpreting Section

365(d)(3) of the Bankruptcy Code, the *Centerpoint* court observed that the "clear and express intent of § 365(d)(3) is to require the trustee to perform the lease in accordance with its terms. To be consistent with this intent, any interpretation must look to the terms of the lease to determine both the nature of the 'obligation' and when it 'arises.'" 268 F.3d at 208. In this case, the Bankruptcy Court correctly turned to the applicable provisions of the lease and correctly concluded based on the express language of those provisions that the Debtors' obligation to render payment arose upon receipt of the bill from the Landlord.[1] (Tr. of 4/12/02 Hearing at 32–33).

▆▆▆ The Debtors contend that because Western received the bills prior to the petition date, Western should have billed the Debtors earlier. The Debtors' argument is based upon language in Section 8.4 of the lease, which requires the Landlord "upon receipt of the tax bill" to prepare its calculation of the tax payment and submit to the Tenant a written request for payment. The Bankruptcy Court rejected the Debtors' argument, and the Court agrees with its conclusion. Section 365(d)(3) is concerned with the Debtors' obligations under the lease, and not the Landlord's obligations. *Centerpoint,* 268 F.3d at 208 (focusing on the trustee's obligations to perform under the lease and stating that "an approach which calls for the trustee to perform obligations as they become due under the terms of the lease fits comfortably within the statutory text of § 365(d)(3)"). As the Bankruptcy Court correctly noted:

> *The fact that the landlord has an obligation under 8.4 to do a calculation upon receipt of the tax bill doesn't give rise to the obligation of the tenant to pay at that point in time.* There is, as the Third Circuit notes, things like rent and taxes are accruing over time and the mere signing of a lease which has obligations in it establishes the legal requirement of the tenant to pay *but the significant thing is when can the landlord demand the payment be made. And that can only be done after the landlord issues an invoice under this particular lease.*

(Tr. of 4/12/02 Hearing at 32–33) (emphasis added).

To the extent that the Debtors seek to distinguish the *Centerpoint* decision, the Court agrees with the Bankruptcy Court that *Centerpoint* is controlling. Although the *Centerpoint* lease involved a security

---

1. With regard to taxes, Section 8.2.1 of the lease provides:

   If the Separate Tax Parcel is not created or is abolished or merged with a larger tax parcel by the taxing authority, then *within 30 days after the Tenant has received the information required by Section 8.4 the Tenant shall pay to the Landlord the amount of general real estate taxes allocable to the Leased Premises* as determined under Subsection 8.2.2(b) during the Term.
   (Ex. 1 at B1) (emphasis added).
   With regard to insurance premiums, Section 10.4 of the lease provides:
   The Landlord shall submit to the Tenant copies of all bills for insurance premiums, a portion of which the Tenant may be obligated to pay to the Landlord under this subsection 10.4., together with a statement showing the computation of the amount owed by the Tenant to the Landlord hereunder, supported by such evidence as the Tenant may require as to the coverage evidenced thereby and payment thereof, *whereupon the Tenant shall pay to the Landlord, within 20 days after receipt of such bills, statement and other evidence, that portion of such insurance premiums required to be paid by the Tenant hereunder.*
   (Ex. 1 at B5) (emphasis added).

deposit mechanism for one of the invoices at issue in which the tenant was required to escrow certain payments by an affirmative date, the other invoices in *Centerpoint* involved a lease section similar to the lease sections at issue in this case in which the tenant became obligated to make payment upon receipt of the invoice from the landlord. 268 F.3d at 207.[2]

Further, the Court rejects the Debtors' argument that the proration billing approach set forth in *In re Handy Andy*, 144 F.3d 1125, 1127 (7th Cir.1998) should apply in this case. Although the Third Circuit acknowledged that manipulative billing practices may be a concern, the Third Circuit rejected the proration approach of the Seventh Circuit in *Handy Andy* and held that the billing date approach should apply as a matter of strict statutory construction. 268 F.3d at 211–212. In contrast, the Debtors' proration argument is more of an equitable argument, and the Court agrees with the Bankruptcy Court's conclusion that under Third Circuit precedent, the *Centerpoint* decision governs. Accordingly, the Court concludes that the Bankruptcy Court did not err in its application of the *Centerpoint* decision to this case, and the Bankruptcy Court correctly concluded that the Debtors' obligation to render payment for the First Installment, Unsecured Taxes and Premium arose when they were billed by Western such that the payments due in this case were properly considered due and payable by the Debtors as post-petition lease obligations and administrative expenses under Section 365(d)(3) of the Bankruptcy Code.

## IV. CONCLUSION

For the reasons discussed, the Court will affirm the April 17, 2002 Order of the Bankruptcy Court granting the Motion To Compel Payment Of Post–Petition Lease Obligations And Administrative Expenses Filed By Western.

An appropriate Order will be entered.

### *ORDER*

At Wilmington, this 28th day of March 2003, for the reasons set forth in the Memorandum Opinion issued this date;

IT IS HEREBY ORDERED that the Order of the United States Bankruptcy Court for the District of Delaware entered on April 17, 2002, granting the Motion To Compel Payment Of Post–Petition Lease Obligations And Administrative Expenses Filed By Western Land Properties is AFFIRMED.

---

**2.** Further, the Court agrees with the Bankruptcy Court's observation that the Third Circuit did not focus on any of the unique factual circumstances in *Centerpoint*, but rather, appears to have expressed the view that the billing date approach should apply instead of the proration approach given the statutory text and the clear and express intent of § 365(d)(3). (Tr. of 4/12/02 Hearing at 23) (recognizing that there are two camps and concluding that the Third Circuit adopted the billing date method); *Centerpoint*, 268 F.3d at 208 (noting that it "is difficult to find a textual basis [in § 365(d)(3)] for a proration approach" if one accepts the premise that § 365(d)(3) requires one to look to the terms of the lease to determine the nature of the obligation and when it arises).