**In re FURR'S SUPERMARKETS, INC., a Delaware Corporation, Debtor.**

**El Paso Properties Corp. and Janus Financial Corporation, Appellants,**

v.

**Yvette Gonzales, Trustee, Appellee.**

**BAP No. NM–02–016.**
**Bankruptcy No. 7–01–10779 SA.**

United States Bankruptcy Appellate Panel of the Tenth Circuit.

Sept. 17, 2002.

Submitted on the briefs: * George M. Cheever of Kirkpatrick & Lockhart LLP, Pittsburgh, Pennsylvania, for Appellants.

Thomas D. Walker and David T. Thuma of Jacobvitz, Thuma & Walker, P.C., Albuquerque, New Mexico, for Appellee.

Before BOULDEN, CORNISH, and NUGENT, Bankruptcy Judges.

---

* The parties did not request oral argument, and after examining the briefs and appellate record, the Court has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed. R. Bankr.P. 8012. The case is therefore ordered submitted without oral argument.

## OPINION

NUGENT, Bankruptcy Judge.

El Paso Properties Corp. and Janus Financial Corporation ("Appellants") appeal an Order Extending Time Within Which Trustee May Assume or Reject Unexpired Lease of El Paso Distribution Center ("Extension Order") entered by the United States Bankruptcy Court for the District of New Mexico. El Paso Properties Corp. ("El Paso") is the lessor, as nominee for the owners, of a warehouse. Janus Financial Corporation ("Janus") is the agent for the owners of the warehouse under a management agreement. The Debtor Furr's Supermarkets, Inc. ("Debtor" or "Furr's") leases the warehouse.

The Bankruptcy Court entered an order granting the trustee an extension of time in which to assume or reject the warehouse lease and assessing certain lease obligations against the trustee under 11 U.S.C. § 365(d)(3). This subsection provides that the "trustee shall timely perform all the obligations of the debtor ... arising from and after the order for relief under any unexpired lease of nonresidential real property, until such lease is assumed or rejected...." 11 U.S.C. § 365(d)(3). El Paso and Janus appeal from that part of the Extension Order assessing the obligations. They assert that the Bankruptcy Court erred in ordering only the prorated portions of the lease obligations attributable to the period during which the trustee was in possession (after the case was converted from Chapter 11 to Chapter 7) be paid.

The Court applied the so-called "proration rule," one of two alternative interpretations of § 365(d)(3). The "proration rule" provides that only those amounts that accrued during the time the debtor or trustee was in possession of the property "arise after the order for relief" and should be assessed against the estate. Appellants argue that the Court should have applied the other interpretation, the "performance date" rule, which provides that obligations under a lease "arise" when they are billed and must be paid in full irrespective of whether the obligations accrued before or after the order for relief. Because we believe the "proration rule" to be the better interpretation of the statute, we affirm.

### Appellate Jurisdiction

The Bankruptcy Appellate Panel has jurisdiction over this appeal.[1] The Appellants timely filed their notice of appeal, and the parties have consented to this Court's jurisdiction by failing to elect to have the appeal heard by the United States District Court for the District of New Mexico.

The Extension Order is a final, appealable order under 28 U.S.C. § 158(a)(1) because it is a determination related to the priority of rents and other charges payable under § 365(d)(3). *In re Geneva Steel Co.,* 260 B.R. 517, 520 (10th Cir. BAP 2001) (order fixing priority of creditor's claim is final), *aff'd,* 281 F.3d 1173 (10th Cir.2002); *In re Koenig Sporting Goods, Inc.,* 229 B.R. 388, 389 (6th Cir. BAP 1999), *aff'd,* 203 F.3d 986 (6th Cir.2000). Section 365(d)(3) gives lessors priority of payment on nonresidential leases during the period prior to assumption or rejection of the lease; the sole issue on appeal is whether the bankruptcy court properly calculated the amount of this payment under § 365(d)(3). *See In re Fox,* 241 B.R. 224, 228 (10th Cir. BAP 1999) (bankruptcy

---

1. As noted *infra* at pages 67–68, the Court considers that the doctrine of invited error may preclude its review of this case, but deems it advisable to reach the merits of the appeal.

court order is final if it conclusively determines discrete disputes within the larger bankruptcy case); 1 *Collier on Bankruptcy* ¶ 5.07[2], at 5 25 (Lawrence P. King ed., 15th ed. rev.2000) (order fixing amount of creditor's claim is final order).

### Standard of Review

 At issue in this appeal is the interpretation of 11 U.S.C. § 365(d)(3). The Bankruptcy Appellate Panel reviews *de novo* a bankruptcy court's interpretation of the Bankruptcy Code. *In re Stewart*, 215 B.R. 456, 459 (10th Cir. BAP 1997), *aff'd*, 175 F.3d 796 (10th Cir.1999); *In re Koenig Sporting Goods, Inc.*, 229 B.R. at 389.

### Background

In 1973, El Paso entered into a nonresidential lease ("Lease") with Safeway Stores, Inc. Furr's succeeded Safeway as the lessee and leased the premises as a warehouse distribution center.

Under the Lease, Furr's is required to make quarterly installments of rent, payable in arrears in the amount of $66,000. The rent payments are due on the last day of March, June, September, and December. *See* Appellants' App. at 172, 207. Furr's is also responsible for paying taxes, assessments, and "other governmental impositions and charges of every kind and nature whatsoever, extraordinary as well as ordinary." Appellants' App. at 172. Upon written request of the lessor, Furr's has sixty days to show evidence of payment of taxes that have become due and payable.[2] *See* Appellants' App. at 172–173. Furr's is also responsible for maintaining the property. *See* Appellants' App. at 175.

In February 2001, Furr's filed a petition seeking relief under Chapter 11 of the Bankruptcy Code. It is uncontested that at the time the petition was filed, the Lease had not been terminated and Furr's remained in possession of the leased premises. During the Chapter 11 case, the bankruptcy court entered an order granting Furr's motion to extend the time to assume or reject the Lease. The parties represent that the Lease was never assumed, assigned or rejected in the Chapter 11 case. There is nothing in the record indicating what amount, if any, Furr's paid the Appellants under the Lease during the Chapter 11 case.

On December 19, 2001 (the "Conversion Date"), prior to assumption or rejection of the Lease, the Debtor's Chapter 11 case was converted to Chapter 7. On December 31, 2001, the quarterly rent payment for the months of October, November and December 2001 came due under the lease. Real estate taxes on the property for the 2001 tax year in the amount of $219,802.45 came due on January 1, 2002. Furr's, as the debtor in possession, had also failed to pay real estate taxes on the property for the 2000 tax year, and accrued interest and penalties on that sum. The Appellants made demand on the Chapter 7 trustee (the "Trustee") for payment, but she did not make any payments as required under the Lease. On January 31, 2002, interest and penalties began to accrue on the 2001 real estate taxes that had not been paid.

On January 29, 2002, the Trustee filed a motion under § 365(d)(4) seeking to extend the 60–day deadline to assume or reject the Lease to June 30, 2002.[3] *See*

---

2. The Lease also provides for proration of taxes between the Lessor and Lessee in the event of termination of the Lease. *See* Appellants' Appendix at 173.

3. In the absence of a timely extension of the 60–day deadline or the timely exercise of a rejection or assumption, the Lease would be "deemed rejected" on February 17, 2002. *See* 11 U.S.C. § 365(d)(4).

Appellants' App. at 10–12. El Paso objected to the requested extension, arguing, in part, that the Trustee's failure to pay lease obligations arising after the Conversion Date violated § 365(d)(3), which requires the Trustee to timely perform lease obligations during the period between the order for relief and the date the lease is assumed or rejected. See Appellants' App. at 13–23. The parties stipulated that the date of the order for relief for purposes of § 365(d)(3) was the Conversion Date, not the date Furr's filed its Chapter 11 petition. See 11 U.S.C. § 348(a) & (c).[4] Thus, El Paso maintained that under § 365(d)(3) it was entitled to payments due under the Lease from the Conversion Date until the date the Lease was assumed or rejected. These payments included (1) all back rent owed and rent coming due in the future, including the quarterly rent payment that was due December 31, 2001; (2) all property taxes owed under the Lease, including those for years 2000 and 2001; (3) accrued interest and penalties owed on the unpaid 2000 taxes; and (4) certain maintenance costs. El Paso asserted that the amount due for rent and taxes alone was in excess of $500,000.[5] See Appellants' App. at 17–18.

The bankruptcy court conducted a preliminary hearing and an evidentiary hearing on the Trustee's motion for extension of time to assume or reject the lease. On February 13, 2002, the bankruptcy court announced its findings of fact and conclusion of law on the record. See Appellants' App. at 139–148. The bench ruling was incorporated into a written Extension Order that was entered on February 15, 2002, prior to the Lease's 60–day deemed rejection date under § 365(d)(4). See Appellants' App. at 237–242. The bankruptcy court's Extension Order granted the Trustee's motion and extended the deadline to assume or reject the lease to June 30, 2002.

In addition, the bankruptcy court calculated the amount of the Appellants' § 365(d)(3) claim, and ordered the Trustee to pay El Paso a total of $97,912.40 by midnight, February 17, 2002. Finding that the Trustee should only be required to pay those rents and taxes accruing after the Conversion Date, the bankruptcy court calculated the amounts due as follows:

| | |
|---|---|
| Two months of rent: | $44,000.00 |
| Two months of property taxes: | $36,633.74 |
| Rent for 2/18/02–2/28/02 | $ 9,428.57 |
| Taxes for 2/18/02–2/28/02 | $ 7,850.09 |
| | $97,912.40 |

The bankruptcy court allowed El Paso a § 365(d)(3) claim for the amounts attributable to the post-conversion time period only.[6] The court disallowed interest or

4. Section 348(a) provides that conversion of a case constitutes an order for relief but, with certain exceptions, does not change the date of the filing of the petition. Section 348(c) provides that § 365(d) applies in a converted case "as if the conversion order were the order for relief." 11 U.S.C. § 348(c). For our purposes, therefore, the Conversion Date is deemed the "order for relief" as used in § 365(d)(3).

5. The quarterly rent payment that came due on December 31, 2001, was $66,000. The 2001 property taxes that came due on January 1, 2002, were $219,802.45. The 2000 property taxes that were unpaid and past due were in the amount of $215,350.87.

6. Although the court explains this ruling in its bench order, the proration of rent and taxes as set forth in the Extension Order does not track exactly with the number of days in the pre- and post-conversion periods. For example, although the court awarded two months of prorated rent and taxes, the actual time period was from December 20, 2001 to February 17, 2002, slightly less than two months. No party has addressed this issue. Thus, to the extent that the amount awarded to El Paso is incorrectly calculated under the bankruptcy court's interpretation of § 365(d)(3), it has been waived by the parties.

penalties on the unpaid taxes and maintenance costs. The court also ordered the Trustee to provide proof of insurance and to make future payments of rent and taxes in advance on a monthly basis until the Lease was either rejected or assumed. Finally, the court ordered that the Lease would be automatically rejected if the Trustee failed to timely comply with these requirements.

This appeal followed. This Court has no information about what transpired after the Extension Order was entered. Thus, it is unknown whether the required payments were made by the Trustee or whether the Trustee assumed or rejected the Lease on June 30, 2002.[7]

### Discussion

■ The issue in this case is whether Appellants, as lessors, are entitled to payment under 11 U.S.C. § 365(d)(3) for all payments coming due under the Lease after the Conversion Date, even if those payments are attributable to rent, taxes, or other lease obligations that accrued prior to the Conversion Date. The Appellants contend on appeal that the bankruptcy court erred in excluding portions of the rent, taxes and interest attributable to the period before the Conversion Date from the amount due Appellants under § 365(d)(3).

■ Section 365(d)(3) provides:

*The trustee shall timely perform all the obligations of the debtor, except those specified in section 365(b)(2), arising*

*from and after the order for relief under any unexpired lease of nonresidential real property, until such lease is assumed or rejected, notwithstanding section 503(b)(1) of this title.* The court may extend, for cause, the time for performance of any such obligation that arises within 60 days after the date of the order for relief, but the time for performance shall not be extended beyond such 60–day period. This subsection shall not be deemed to affect the trustee's obligations under the provisions of subsection (b) or (f) of this section. Acceptance of any such performance does not constitute waiver or relinquishment of the lessor's rights under such lease or under this title.

11 U.S.C. § 365(d)(3) (emphasis added). The emphasized portion of § 365(d)(3) gives lessors a priority claim similar to an administrative expense claim under § 503(b)(1). The difference is that lessors, as opposed to typical administrative expense claimants under § 503(b)(1), are not required to establish value or prove a benefit to the estate to establish the amount of their claim, but rather are entitled to current payment of the amounts required under their leases. *See, e.g., In re Cukierman,* 265 F.3d 846, 849–50 (9th Cir.2001); *In re P.J. Clarke's Restaurant Corp.,* 265 B.R. 392, 397 (Bankr.S.D.N.Y.2001).

Section 365(d)(3) was added to the Bankruptcy Code in 1984. The legislative

---

**7.** Given this fact, the Court has considered whether this appeal is ripe or moot and should be dismissed. Because the parties are merely disputing the calculation of the pre-conversion lease payments, the events occurring after entry of the Extension Order are not extremely relevant. Even if the Trustee immediately defaulted, the Lease would be deemed rejected as of that date. But the Appellants would still be entitled to a § 365(d)(3) claim from the Conversion Date to the date of rejection. Whether lease payments attributable to the pre-conversion period should be included within that claim would still be in issue. Likewise, if the Lease was assumed by the Trustee on June 30, 2002, the Appellants would still be entitled to a § 365(d)(3) claim and the amount of that claim would remain an issue. Thus, the Court can render effective relief and will exercise appellate jurisdiction.

history explains the reason for enacting § 365(d)(3):

> This subtitle contains three major substantive provisions which are intended to remedy serious problems caused shopping centers and their solvent tenants by the administration of the bankruptcy code ... A second and related problem is that during the time the debtor has vacated space but has not yet decided whether to assume or reject the lease, the trustee has stopped making payments under the lease. In this situation, the landlord is forced to provide *current* services—the use of its property, utilities, security, and other services—without *current* payment. No other creditor is put in this position. In addition, the other tenants often must increase their common area charge payments to compensate for the debtor. The bill would lessen these problems by requiring the trustee to perform *all* the obligations of the debtor under a lease of nonresidential real property *at the time required in the lease.* This timely performance requirement will insure that debtor-tenants pay their rent, common area, and other charges on time pending the trustee's assumption or rejection of the lease.

130 Cong. Rec. S8887, 8895 (daily ed. June 29, 1984) (statement of Sen. Hatch) (emphasis added) [hereinafter the "Hatch Statement"].

Neither the Tenth Circuit, this Court, nor the New Mexico District Court has interpreted § 365(d)(3). There is a split among the three Circuits that have addressed the issue, and two rules have emerged in the interpretation of § 365(d)(3): the "proration" rule and the "performance" rule.[8] The leading case for the proration rule is *In re Handy Andy Home Improvement Centers, Inc.,* 144 F.3d 1125 (7th Cir.1998).[9] The leading case for the performance date rule is *In re Montgomery Ward Holding Corp.,* 268 F.3d 205 (3rd Cir.2001).[10] The bankruptcy court in the instant case applied the proration rule to calculate the amount of the Appellants' § 365(d)(3) claim and rejected the performance date rule advocated by Appellants.

### The Proration Rule

Under the proration rule, lessors are entitled to lease payments under § 365(d)(3) arising during and attributable to the period after the order for relief, or as in this case, after the Conversion Date. Thus, rent, taxes, and other payments coming due under a lease after the Conversion Date are prorated between the pre-conversion period and the post-conversion period. The trustee is required to pay only those amounts that accrue after the order for relief or Conversion Date.

The rationale for the proration rule was articulated by Judge Posner writing for the Seventh Circuit in *Handy Andy:*

---

**8.** The existence of a split in the circuits in the interpretation of § 365(d)(3) is, in itself, evidence of the ambiguity in the language. *In re Southern Star Foods, Inc.,* 144 F.3d 712, 715 (10th Cir.1998).

**9.** The following courts have followed the *Handy Andy* formulation and applied a proration rule. *See, e.g., In re Trak Auto Corp.,* 277 B.R. 655, 663 (Bankr.E.D.Va.2002); *In re McCrory Corp.,* 210 B.R. 934, 940 (S.D.N.Y. 1997); *In re William Schneider, Inc.,* 175 B.R. 769, 772–73 (S.D.Fla.1994).

**10.** The following courts have adopted the performance date rule. *See, e.g., In re Cukierman,* 265 F.3d 846, 847 (9th Cir.2001); *In re Koenig Sporting Goods, Inc.,* 203 F.3d 986, 989 (6th Cir.2000); *In re CCI Wireless, LLC,* 279 B.R. 590, 594 (Bankr.D.Colo.2002); *In re Krystal Co.,* 194 B.R. 161, 164 (Bankr. E.D.Tenn.1996); *In re Duckwall–ALCO Stores, Inc.,* 150 B.R. 965, 976 (D.Kan.1993).

This [proration] interpretation is more sensible than [the performance date interpretation] because it tracks the purpose of giving postpetition creditors a high priority in the distribution of the debtor's estate. The purpose is to enable the debtor to keep going for as long as its current revenues cover its current costs.... What [Handy Andy] wanted was the continued occupancy of the leased property until it rejected the lease. To get this benefit it had to pay the full rent under the lease for every day that it continued to occupy the property.... But Handy Andy's debt to [the lessor] for 1994 and earlier 1995 taxes relates entirely to an earlier period, and is thus no different from its debts to trade creditors for supplies that it bought in 1994 but never paid for. A trade creditor does not, by virtue of continuing to sell to the debtor after the latter has gone into bankruptcy, obtain a priority for what the debtor owes him for goods or services sold to the debtor before the bankruptcy. [The lessor] is in no different situation by virtue of section 365(d)(3).

. . . .

... Until [section 365(d)(3)'s] enactment in 1984, the landlord was in an awkward spot during the interval between the entry of the tenant into bankruptcy and the tenant's decision to assume or reject the unexpired lease. At the same time the automatic stay would prevent the landlord from evicting the tenant, the "actual, necessary" provision of section 503(b)(1) ... might prevent the landlord from collecting the rent in full, promptly, and without legal expense. This was a problem for all postpetition creditors ... but most of the others were dealing voluntarily with a bankrupt and thus knowingly assuming the risk of not being fully compensated for their services, while the landlord was being forced to deal with his bankrupt tenant on whatever terms the bankruptcy court imposed because he could not evict him. To give relief to landlords, Congress passed section 365(d)(3), which ... allows them during that awkward postpetition prerejection period to collect the rent fixed in the lease. There is no indication that Congress meant to go any further than to provide a landlord exception to 503(b)(1), and thus no indication that it meant to give landlords favored treatment for any class of prepetition debts.

*Handy Andy,* 144 F.3d at 1127–1128 (citations omitted).

In addition, some advocates of the proration rule have concluded that the language in § 365(d)(3) is plain—that "arising from and after the order for relief" means all obligations under the lease that arise *after* the order for relief.[11]

### The Performance Date Rule

Under the performance date rule, lessors are entitled to lease payments under § 365(d)(3) for any payment that becomes due under the lease after the order for relief, or as in this case, the Conversion Date, even if the lease payments due are attributable to periods prior to the order for relief.

The majority in *Montgomery Ward* resolved the interpretation issue by concluding that § 365(d)(3) was unambiguous and determining the point in time when an obligation "arises" under a lease.

The issue for resolution then is what Congress meant when it referred to "obligations of the debtor arising under a lease after the order of relief." ...

. . . .

11. *See Montgomery Ward,* 268 F.3d at 212 & n. 1 (Mansmann, J., dissenting).

... The clear and express intent of § 365(d)(3) is to require the trustee to perform the lease in accordance with its terms. To be consistent with this intent, any interpretation must look to the terms of the lease to determine both the nature of the "obligation" and when it "arises." If one accepts this premise, it is difficult to find a textual basis for the proration approach. On the other hand, an approach which calls for the trustee to perform obligations as they become due under the terms of the lease fits comfortably with the statutory text....

... In the context of a lease contract, it seems to us that the most straightforward understanding of an obligation is something that one is legally required to perform under the terms of the lease and that such an obligation arises when one become legally obligated to perform.

268 F.3d at 208–209.[12]

An examination of Appellants' position on this issue suggests that Appellants may have invited the error of which they complain, thus preventing this Court's exercise of appellate review. In their pretrial submissions and in oral argument, the Appellants *urged* the bankruptcy court to place the Trustee on "pay as you go" status. This was exactly what the bankruptcy court did. In its amended prehearing brief submitted to the bankruptcy court, after advocating application of the performance date rule, El Paso went on to state:

In addition, there are substantial charges that are currently accruing under the Lease but that are not yet due and payable under the terms of the Lease. These charges include rent for the current and future calendar quarters, and taxes for the current and future tax years....

... To protect the Lessor in these circumstances, Lessor suggests that the Lease should be put on a "pay as you go" basis, and that pro rata portions of the rent and taxes should be payable monthly in advance, subject to a refund of any such amounts that are allocable to periods following the Trustee's rejection of the Lease.

*See* Appellants' App. at 28. *See also* Appellants' App. at. 74–75, 127. Appellants essentially asked that during the pre-rejection period, the bankruptcy court depart from the payment provisions of the lease and require monthly advance payments of the rents and taxes. This is what the proration rule does. Appellants' advocacy of this position below triggers the invited error doctrine to preclude appellate review. *John Zink Co. v. Zink,* 241 F.3d 1256, 1259 (10th Cir.2001); *Mach v. Abbott Co.,* 136 F.2d 7, 10 (8th Cir.1943).

Even had Appellants not invited error, we conclude that the proration rule as explained by Judge Posner's formulation in *Handy Andy* is the better-reasoned approach and is more consistent with the legislative purpose underlying § 365(d)(3)'s enactment—the provision of current relief for lessors who find themselves as "involuntary" creditors.[13]

---

**12.** Judge Mansmann's dissent in *Montgomery Ward* observed that the majority ruling effectively holds that an obligation that accrues over time does not "arise" as it accrues and gives lessors an unwarranted preference to landlords for recovery of pre-petition debts: "[T]he majority elevates the accident or artifice of the [performance] date above the economic reality of the accrual ... and unfairly favors landlords over similarly situated prepetition creditors." 268 F.3d at 212–13.

**13.** We note that the Sixth Circuit's leading case involved a monthly, rather than a quarterly rent obligation payable in arrears as in the instant case, and we question whether a quarterly obligation would be treated similarly. *In re Koenig Sporting Goods, Inc.,* 203 F.3d at 989 n. 4–5. *Cf. Vause v. Capital Poly*

To hold otherwise would elevate prepetition and preconversion rents and expenses above other similarly situated trade creditors. Under the Appellants' (and the Third Circuit's) formulation, the rents and taxes that accrued before the Conversion Date would be paid by the Chapter 7 estate before payments to any other administrative claimant or creditor. Had this been the intent of Congress, it would have enacted conforming amendments to sections 503 and 507 along with the amendment to § 365(d). *See In re Nunez,* 232 B.R. 778, 782 (9th Cir. BAP 1999) (omission of language included in another statute section is presumed intentional). The Appellants have given an unwarranted expansion to the meaning and purpose of § 365(d)(3)—a meaning that transforms pre-petition claims into post-petition claims and results in lessors leap-frogging over other unsecured creditors. This result far exceeds the policy aims articulated in the Hatch Statement.

 In this Court's view, the Appellants' reading of § 365(d)(3) unravels the priority scheme of the Bankruptcy Code. This Court is required to read § 365(d)(3) in context with the whole Bankruptcy Code and not in isolation. *See Dalton v. Internal Revenue Service,* 77 F.3d 1297, 1299 (10th Cir.1996) (Internal Revenue Code); *In re Family Snacks, Inc.,* 257 B.R. 884, 899 (8th Cir. BAP 2001) (Bankruptcy Code). Moreover, statutory priorities must be narrowly construed. *In re Southern Star Foods, Inc.,* 144 F.3d 712, 714 (10th Cir.1998). In a converted case, any unpaid rents during the Chapter 11 case are administrative expenses subject to proof of the actual costs of preserving the estate. In the Chapter 7 distribution,

these Chapter 11 rents would be subordinated to any unpaid rents accruing during the Chapter 7 case. *See* 11 U.S.C. § 726(b). Thus, if the Trustee rejects the lease, the Chapter 11 rents will be treated as administrative expenses and subordinated to any unpaid Chapter 7 rents. This priority scheme clearly suggests that Congress fully understands the distinction between administrative expenses incurred pre- and post-conversion. Section 365(d)(3) does nothing to change this scheme.

 We believe § 365 renders the salutary purpose of protecting landlords from the consequences of "involuntary" creditor status. Under this section, if a debtor or trustee rejects a lease, the prepetition rent payable is an unsecured claim (subject to some limitations). *See* 11 U.S.C. § 502(b)(6). In the event of a rejection, the postpetition rent payable and unpaid constitutes an administrative expense under § 503. If the lease is assumed, it must be fully cured, meaning that the landlord receives both pre- and postpetition defaulted rents. *See* 11 U.S.C. § 365(b)(1). Prior to 1984, landlords whose leases had neither been rejected nor assumed had to seek payment of current postpetition rents as administrative expenses (on notice and hearing) pursuant to § 503. This was rightly perceived as an injustice to these essentially involuntary creditors whom Congress deemed to be entitled to "current" payment. *See* Hatch Statement, *supra,* at 8. Section 365(d)(3) was enacted to require the debtor in possession or trustee to pay current rent obligations as they came due without being subject to the requirements of § 503(b). We view this as a balancing of the debtor's or trustee's

---

*Bag, Inc.,* 886 F.2d 794 (6th Cir.1989) (rejecting argument that annual farm rent payable in arrears accrued only on the payment date). We also note that the only reported bankrupt-

cy court case in the Tenth Circuit, *In re CCI Wireless, LLC,* 279 B.R. 590 (Bankr.D.Colo. 2002), distinguishes between monthly and longer-term interval rents. *Id.* at 594.

need to retain the leasehold and the creditor's inability to evict the debtor or trustee during the § 365(d)(4) period. Consistent with this, we hold that lease obligations "arise" under § 365(d)(3) as the obligations accrue, not simply when they are billed, and that the debtor or trustee is required to pay only those lease obligations that accrue after the Conversion Date and prior to the date of rejection or assumption.

Finally, this Court addresses the bankruptcy court's refusal to include interest and penalties on the 2000 taxes and the unspecified maintenance costs in the amount of the 365(d)(3) claim. First, with respect to the Trustee's maintenance or repair obligations under the Lease, the record is silent whether those obligations accrued before or after the Conversion Date. Nor is there any evidence of the amount of such maintenance costs. With the record before it, the bankruptcy court was correct in concluding that the maintenance obligations were § 365(b)(1) issues for a later time.[14] In any event, the Appellants have waived any claimed error with respect to the Lease maintenance obligations by failing to raise and address this issue in their opening brief. *In re Blagg*, 223 B.R. 795, 808 (10th Cir. BAP 1998).

Likewise, the record is deficient on the amount of interest and penalties that have accrued on the 2000 taxes since the Conversion Date. Counsel for the parties admitted to being perplexed concerning the manner in which the taxing authorities calculated interest and penalties. Further, the interest and penalties are attributable to a pre-conversion lease obligation (*i.e.* year 2000 taxes) and should not be allowed under a proration theory. Moreover, the interest and penalties on taxes arise under state law, not under the terms of the

Lease. *See In re Cukierman*, 265 F.3d at 852–53. Accordingly, the bankruptcy court did not err in excluding from the § 365(d)(3) amount the interest and penalties on the taxes for year 2000.

For the reasons set forth above, the bankruptcy court's Extension Order is AFFIRMED.

---

**14.** In any event, the Appellants have furnished the Court with no legal authority indicating that unliquidated amounts are included in § 365(d)(3) claims.