# In the

# United States Court of Appeals

## For the Seventh Circuit

_____

No. 02-4331

HA-LO INDUSTRIES, INC.,

*Debtor-Appellant,*

v.

CENTERPOINT PROPERTIES TRUST,

*Appellee.*

_____

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 02 CV 3967—**Matthew F. Kennelly**, *Judge.*

_____

ARGUED JUNE 4, 2003—DECIDED SEPTEMBER 3, 2003

_____

Before RIPPLE, DIANE P. WOOD, and WILLIAMS, *Circuit Judges.*

WILLIAMS, *Circuit Judge.* HA-LO Industries, Inc. appeals from a district court's decision affirming a bankruptcy court order directing HA-LO to pay its former landlord, Center-Point Properties, Inc., the remainder of a full month's rent that was due under an office building lease which covered a period of time beyond HA-LO's rejection of the lease. The lower courts determined that § 365(d)(3) of the Bankruptcy Code requires a debtor in possession that has elected to reject a nonresidential real property lease to pay the monthly rent due under that lease as it becomes due, even though this may result in the advance payment of rent that covers

a period of time after the debtor's rejection of the lease takes effect. The lower courts also held that the lease did not provide an independent basis for proration of the rent. Because we find that § 365(d)(3) requires full payment of rent under these circumstances, and that HA-LO's lease does not provide for proration in this case, we affirm.

## I. BACKGROUND

HA-LO and CenterPoint were parties to a lease by which CenterPoint rented an office building to HA-LO for a term of 15 years commencing on April 1, 2001. Under the terms of the lease, HA-LO was obligated to pay monthly rent in the amount of $660,342.17, due and payable in full on the first day of each month. HA-LO moved into the leased premises on April 1, 2001, and remained in possession of the premises through the first few days of November 2001.

On July 30, 2001, HA-LO filed a voluntary petition for reorganization under Chapter 11 of the Bankruptcy Code. On August 21, 2001, pursuant to § 365(a) of the Bankruptcy Code, HA-LO sought authority to reject the lease, at its option, effective upon 30 days written notice to CenterPoint. While the bankruptcy court granted HA-LO that authority on September 6, 2001, HA-LO did not immediately exercise that authority and continued to occupy the premises under the terms of the lease. On October 3, 2001, however, HA-LO decided to exercise its option to reject the lease and provided written notice to CenterPoint that it would vacate the premises and reject the lease effective November 2, 2001.

On November 1, 2001, HA-LO paid CenterPoint $60,031.17, representing a prorated payment of rent for the three days during November 2001 that HA-LO planned to occupy the office building (HA-LO vacated the premises by November 4). CenterPoint accepted HA-LO's check but demanded payment from HA-LO for the balance of the November rent. HA-LO refused and CenterPoint filed an

administrative rent claim in the bankruptcy court and sought an order to compel immediate payment of the balance of the November 2001 rent pursuant to § 365(d)(3) of the Bankruptcy Code.[1] The bankruptcy court granted CenterPoint's motion and ordered HA-LO to pay the balance of the November 2001 rent, which amounted to $600,311. The bankruptcy court concluded that, because § 365(d)(3) provides that the trustee or, as here, the debtor in possession must satisfy all rent obligations under a lease "arising . . . after the order for relief" as those obligations come due, HA-LO was obligated under the lease to pay the full November 2001 rent on November 1 because it rejected the lease effective November 2 and vacated the premises by November 4. The bankruptcy court also rejected HA-LO's claim that the terms of the lease provide for prorated rent payment. HA-LO appealed to the district court, which affirmed the bankruptcy court's order.

---

[1] Section 365(d)(3) of the Bankruptcy Code provides:

> The trustee shall timely perform all the obligations of the debtor, except those specified in section 365(b)(2), arising from and after the order for relief under any unexpired lease of nonresidential real property, until such lease is assumed or rejected, notwithstanding section 503(b)(1) of this title. The court may extend, for cause, the time for performance of any such obligation that arises within 60 days after the date of the order for relief, but the time for performance shall not be extended beyond such 60-day period. This subsection shall not be deemed to affect the trustee's obligations under the provisions of subsection (b) or (f) of this section. Acceptance of any such performance does not constitute waiver or relinquishment of the lessor's rights under such lease or under this title.

11 U.S.C. § 365(d)(3). The rights and obligations of the trustee apply with equal force to a debtor in possession such as HA-LO. 11 U.S.C. § 1107(a).

On appeal, HA-LO challenges the conclusion that § 365(d)(3) requires it to pay CenterPoint the full November 2001 rent and argues that our decision in *In Re Handy Andy Home Improvement Centers, Inc.*, 144 F.3d 1125 (7th Cir. 1998), supports its payment of prorated rent for only those days in November 2001 that it actually occupied the premises. Alternatively, HA-LO argues that the terms of the lease, independent of § 365(d)(3), provide that it need only pay prorated rent for November 2001. We address these issues in turn.

## II.  ANALYSIS

This case requires the interpretation of both a statute, § 365(d)(3) of the Bankruptcy Code, and a contract, the building lease between HA-LO and CenterPoint, which are questions of law that we review de novo. *Shelby County State Bank v. Van Diest Supply Co.*, 303 F.3d 832, 835 (7th Cir. 2002).

### A.  Section 365(d)(3) of the Bankruptcy Code

When interpreting the meaning of a statute, we focus first on the language of the statute. *Precision Indus., Inc. v. Qualitech Steel SBQ, LLC*, 327 F.3d 537, 543-44 (7th Cir. 2003) (citing *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 438 (1999)). "[C]ourts must presume that a legislature says in a statute what it means and means in a statute what it says there. When the words of a statute are unambiguous, then, this first canon is also the last: 'judicial inquiry is complete.'" *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253-54 (1992) (quoting *Rubin v. United States*, 449 U.S. 424, 430 (1981)) (internal citations omitted).

HA-LO's obligation to pay its rent to CenterPoint is governed by § 365(d)(3) of the Bankruptcy Code and the terms of the parties' lease. Section 365(d)(3) provides that obliga-

tions under an unexpired lease that arise after an order for relief is entered permitting the bankruptcy case to proceed (commonly referred to as arising "postpetition"),[2] and prior to rejection of the lease ("prerejection"), are to be timely fulfilled under the terms of the lease:

> The [debtor in possession; *see* 11 U.S.C. § 1107(a)] shall timely perform all [of its] obligations . . . arising from and after the order for relief under any unexpired lease of nonresidential real property, until such lease is assumed or rejected. . . .

11 U.S.C. § 365(d)(3). HA-LO's petition for bankruptcy is dated July 30, 2001.[3] Therefore, under the prescriptions of § 365(d)(3), HA-LO is required to timely perform all lease obligations that arise after July 30, 2001, until the lease is rejected.

The lease between HA-LO and CenterPoint provides that rent for any given month is due and payable "in advance, in twelve (12) equal monthly installments . . . on the first (1st) day of each month." Under the terms of the lease, then, HA-LO's obligation for the November 2001 rent arose on November 1. At that time, however, HA-LO had not yet effected its rejection of the lease; it had informed Center-Point on October 3 that it would reject the lease as of November 2. Under the terms of the lease, and in accordance

---

[2]  It is a technical misnomer to refer to something as "prepetition" or "postpetition," as the date on which the order for relief is granted is the true dividing line. *See In re Handy Andy Home Improvement Ctrs., Inc.*, 144 F.3d 1125, 1126 (7th Cir. 1998). Usually, but not always, the date on which the petition is filed and the date on which the order for relief is granted are the same. *See id.*

[3]  It is unclear from the record when the order for relief was granted in this case, but we will presume it was granted on July 30, 2001, as the parties do not contend otherwise and it makes no substantive difference to our analysis.

with § 365(d)(3), HA-LO was therefore obligated to pay the entire November 2001 rent on November 1.

HA-LO argues that our decision in *In re Handy Andy Home Improvement Centers, Inc.*, 144 F.3d 1125 (7th Cir. 1998), is controlling and compels proration of rent so that HA-LO is liable only for those few days of November 2001 during which its occupancy of the premises actually fell postpetition and prerejection. We disagree. *Handy Andy* addressed a situation in which non-rent expenses (real estate taxes), for which Handy Andy was liable under the terms of the lease, had in part accrued prepetition while Handy Andy occupied the premises, but were not billed to Handy Andy until after the start of the postpetition period and prior to Handy Andy's rejection of the lease. *Id.* at 1126. We held in *Handy Andy* that the portion of taxes that accrued during Handy Andy's prepetition occupancy therefore had arisen prepetition, and thus were akin to "sunk costs" that are not chargeable to Handy Andy even though billed postpetition. "In economic terms, the prioritization of postpetition debt enables the debtor (or trustee) to ignore sunk costs—treat bygones as bygones—and continue operating as long as the debtor's business is yielding an economic profit." *Id.* at 1127; *see generally* Charles W. Adams, *An Economic Justification for Corporate Reorganizations*, 20 HOFSTRA L. REV. 117 (1991); *but see CenterPoint Props. v. Montgomery Ward Holding Corp. (In re Montgomery Ward)*, 268 F.3d 205, 209 (3d Cir. 2001) ("The clear and express intent of § 365(d)(3) is to require the trustee to perform the lease in accordance with its terms. . . . It is difficult to find a textual basis for a proration approach.").

Unlike the portion of real estate taxes that accrued and therefore arose prepetition in *Handy Andy*, HA-LO challenges paying in full a rent obligation that arose entirely postpetition and prerejection, but which covers in part a period of time that extends beyond rejection of the lease. Postpetition rent covering a period of time that extends into

the postrejection period is "not a sunk cost that relates to a time before the bankruptcy case, but a charge for the consumption of a resource during the administration of the case . . . , and costs of administration must be paid." *In re Comdisco, Inc.*, 272 B.R. 671, 674-75 (Bankr. N.D. Ill. 2002) (citing 11 U.S.C. § 1129(a)(9)(A)). *Handy Andy* therefore does not constrain our analysis.

Moreover, *Handy Andy* recognizes the purpose behind § 365(d)(3)'s enactment and does nothing to diminish the statutory protection afforded landlords for purely postpetition and prerejection obligations to pay rent. As we acknowledged in *Handy Andy*, landlords, unlike other creditors, are "forced to deal with [their] bankrupt tenant[s] on whatever terms the bankruptcy court impose[s]" because landlords cannot evict their tenant. 144 F.3d at 1128 (citing *Robinson v. Chicago Hous. Auth.*, 54 F.3d 316, 317-18 (7th Cir. 1995) (automatic stay prevents landlord from evicting tenant)). We noted that Congress passed § 365(d)(3) to relieve landlords of the uncertainty of collecting rent fixed in the lease "in full, promptly, and without legal expense" during the awkward postpetition prerejection period. *Id.* We therefore find *Handy Andy* supports our conclusion that § 365(d)(3) requires HA-LO to pay its November 2001 rent in full on November 1, the postpetition and prerejection day on which such payment was due to CenterPoint under the terms of the lease.

The Sixth Circuit addressed this exact question in *Koenig Sporting Goods, Inc. v. Morse Road Co. (In re Koenig Sporting Goods, Inc.)*, 203 F.3d 986 (6th Cir. 2000), and similarly held that rent must be paid on the day it is due even if it will cover a period of time after the lease is rejected. *See id.* at 989. In doing so, the court noted that "[t]he purpose of § 365(d) is to prevent parties in contractual or lease relationships with the debtor from being left in doubt concerning their status vis-a-vis the estate." *Id.* (citations and quotation marks omitted). "The legislative history also sug-

gests that the purpose was 'to relieve the burden placed on nonresidential real property lessors (or 'landlords') during the period between a tenant's bankruptcy petition and assumption or rejection of a lease.'" *Id.* (citing *Omni Partners, L.P. v. Pudgie's Dev. of NY, Inc. (In re Pudgie's Dev. of NY, Inc.)*, 239 B.R. 688, 692 (S.D.N.Y. 1999) (citing 130 Cong. Rec. S8894-95 (daily ed. June 29, 1994) (statement of Sen. Hatch))).

The Sixth Circuit acknowledged (but nevertheless rejected) the practical realities of the argument for proration:

> [Koenig] argues that policy considerations, equity, and "common sense" compel adoption of the proration method in this context. We disagree. [Koenig] alone was in the position to control Morse's entitlement to payment of rent for December. If [Koenig] had rejected the lease effective November 30, 1997, rather than December 2, it would not have been obligated to pay rent for December under 11 U.S.C. § 365(d)(3). Instead, an election was made to reject the lease effective December 2, one day after [Koenig's] monthly rent obligation would arise. In this case, involving a month-to-month, payment-in-advance lease, where the debtor had complete control over the obligation, we believe that equity as well as the statute favors full payment to Morse.

*Id.* (citations omitted). The same principle applies to HA-LO, as it alone controlled CenterPoint's entitlement to payment of rent for November 2001. If HA-LO had rejected the lease effective October 31, rather than November 2, it would not have been obligated to pay rent for November under 11 U.S.C. § 365(d)(3). Instead, it elected to reject the lease one day after its monthly rent obligation to CenterPoint would arise. Under these circumstances, we agree with the Sixth Circuit that equity as well as the statute favors full payment.

B.  Proration Under the Lease

HA-LO argues that even if § 365(d)(3) does not allow for proration, we should read the lease itself to require proration in the event of bankruptcy. HA-LO admits, however, that the lease does not address whether proration applies to a partial month's rent in a situation where, as here, the debtor in bankruptcy proceedings rejects the lease postpetition. Instead, HA-LO argues that because the lease provides for proration in certain anticipated circumstances where occupancy may be for less than a full month—in the first month (§ V.1),[4] in the last month when the landlord terminates the lease (§ XX.1), when the premises are destroyed or left uninhabitable (§ X.1), or when the premises are condemned (§ XIII.1)—we should read the lease to suggest that the parties would take a position favoring proration in situations they could not and did not anticipate, such as the one we have here.[5] HA-LO makes this argu

---

[4]  Section V.1 of the lease provides: "The Annual Base Rent shall be paid in advance, in twelve (12) equal monthly installments, commencing on the Commencement Date (prorated for any partial month) and continuing on the first (1st) day of each month thereafter for the balance of the term of the lease. . . ." The bankruptcy and district courts rejected an argument by HA-LO that the parenthetical "(prorated for any partial month)" makes clear that the tenant's obligation is to pay prorated rent for *any* partial month during the period that the lease is in force, and not just the month in which the lease commences. Curiously, HA-LO does not challenge the lower courts' holdings on this issue. HA-LO's failure to raise this issue on appeal, however, necessarily constitutes waiver of any claim of error with respect to the lower courts' decisions on that issue. *Kauthar SDN BHD v. Sternberg*, 149 F.3d 659, 668 (7th Cir. 1998); *Williams v. Leach*, 938 F.2d 769, 772 (7th Cir. 1991).

[5]  In support of its argument HA-LO cites only to *Connecticut Gen-*
(continued...)

ment even though the lease contains a merger clause which states that the lease is the entire agreement between the parties and "fully and completely expresses their agreements." *See Bock v. Computer Assocs. Int'l, Inc.*, 257 F.3d 700, 707 (7th Cir. 2001) ("Written contracts are presumptively complete in and of themselves; when merger clauses are present, this presumption is even stronger."). Under these circumstances, we must decline HA-LO's invitation to read the lease more broadly than the parties themselves provided.

## III.  CONCLUSION

For the foregoing reasons, the judgment is AFFIRMED.

A true Copy:

    Teste:

                    _____

                    *Clerk of the United States Court of*
                    *Appeals for the Seventh Circuit*

---

[5]  (...continued)
*eral Life Insurance Co. v. Sun Life Assurance Co. of Canada*, 210 F.3d 771, 774-76 (7th Cir. 2000), in which we permitted consolidated arbitration of a dispute involving ten parties to a contract even though the contract did not appear to address the issue. In *Sun Life*, however, we were resolving an ambiguity in an arbitration clause regarding the submission of the dispute to a panel of three arbitrators when "each party" is to select "one arbitrator" for the panel, and the parties were asserting that separate arbitrations were therefore required. By contrast, there is no ambiguity in HA-LO's lease about whether proration is appropriate when a debtor in bankruptcy rejects the lease postpetition; the lease does not address the issue at all. Therefore, *Sun Life* is not applicable.