**In re DUNN INDUSTRIES, LLC t/a Dunn Industries, Debtor.**

**Heathcon Holdings, LLC, Movant,**

v.

**Dunn Industries, LLC, Respondent.**

No. 04–23386–SD.

United States Bankruptcy Court, D. Maryland, at Baltimore.

Jan. 28, 2005.

David Lee Tayman, Lawrence Coppel, Susan J. Klein, Gordon, Feinblatt, et al., Baltimore, MD, for Debtor.

Lawrence J. Yumkas, Sedica Sawez, Rosenberg, Martin, Funk, Greenberg, LLP, Baltimore, MD, for Heathcon Holdings, LLC.

## MEMORANDUM AND ORDER DENYING HEATHCON HOLDINGS, LLC'S MOTION FOR RELIEF FROM STAY

E. STEPHEN DERBY, Bankruptcy Judge.

This matter is before the Court upon Heathcon Holdings, LLC's ("Heathcon") Motion for Relief from Stay and the Opposition Response on Behalf of Dunn Industries, LLC ("Dunn Industries" or "Debtor"). After reviewing the relevant authorities and considering the Motion, the Opposition and arguments of counsel, Heathcon's Motion for Relief from Stay will be denied for the reasons that follow.

### I. *Background and Relevant Facts*

The Debtor filed this Chapter 11 case on June 2, 2004, and the Debtor remains a debtor-in possession. The Debtor manufactures specialized storage tanks used in petroleum, chemical, water and power generation applications.

The Debtor is the lessee of nonresidential real property from Heathcon pursuant to a Premises Lease dated July 3, 2003 ("Lease"). *See* Lease, Exhibit 1 to Relief From Automatic Stay Hearing, held October 1, 2004. Debtor has obtained several extensions to assume or reject the Lease with Heathcon pursuant to 11 U.S.C. Section 365(d)(4). The Court's Order Further Extending Time to Assume or Reject Lease of Nonresidential Real Property allows Debtor up to and including January 31, 2005 to assume or reject the Lease.

The Lease provides for a three year initial term with an option for Debtor to extend the lease for an additional two years. Lease, Article 1B and C. The base rent under the Lease is $22,000 per month, subject to yearly increases. Lease, Article 2A. All *ad valorem* and other real property taxes, and any other taxes related to the value, occupancy or use of the leased

premises are to be paid by Heathcon, with the following reimbursement provision:

> Lessee agrees to reimburse to Lessor as additional rent, within twenty (20) days of being presented with an invoice for the same, an amount equal to the amount of the Taxes....

Lease, Article 5.

Property taxes in Maryland are paid in advance. For example, real property taxes for the fiscal year ending June 30, 2005 were due on July 1, 2004, and they became late with interest accruing after September 30, 2004. *See* Maryland Code Ann., Tax Property, §§ 10–102 and 14–605 (2001).

On or around July 21, 2004, Heathcon provided Debtor with an invoice for real property taxes for the period July 1, 2004 through June 30, 2005 in the amount of $15,321.12. Debtor did not pay the bill in full, but has provided pro rata payments each month.[1]

The Debtor maintains that the real property tax obligation accrues, and therefore arises, under 11 U.S.C. Section 365(d)(3) only for each day the debtor occupies the leasehold on a post-petition pre-rejection basis. Heathcon argues that the entirety of the taxes must be paid in a lump sum because the obligation arose under Section 365(d)(3) when the invoice was presented by Heathcon. Because Debtor has not paid the tax bill in full, Heathcon argues, there has been a post-petition breach of the Lease entitling Heathcon to relief from the automatic stay for cause, including lack of adequate protection under 11 U.S.C. Section 362(d)(1).

## II. *Legal Analysis*

This matter requires the Court to determine when a lessee's obligation to pay real property taxes arises under 11 U.S.C. Section 365(d)(3) post-petition, but prior to assumption or rejection of a nonresidential real property lease.

Section 365(d)(3), in pertinent part, provides as follows:

> The trustee shall timely perform all obligations of the debtor, except those specified in Section 365(b)(2), *arising from and after the order for relief,* under any unexpired lease of nonresidential real property, until such lease is assumed or rejected, notwithstanding section 503(b)(1) of this title.

11 U.S.C. § 365(d)(3)(emphasis added).

Two distinct approaches have been utilized in analyzing when a property tax obligation arises under Section 365(d)(3) in the post-petition pre-rejection period. The minority approach, recently embraced by the Third Circuit in *In re Montgomery Ward Holding Corp.,* 268 F.3d 205 (3rd Cir.2001)(*Montgomery Ward*), finds the terms "obligations" and "arising" in 11 U.S.C. Section 363(d)(3) to be unambiguous and to compel the result that obligations must be paid at the time required in the lease. *Montgomery Ward,* 268 F.3d at 209, 211. This approach is known as the billing method.

In *Montgomery Ward*, provisions in a nonresidential real property lease defined all property taxes as additional rent and required payment upon receipt of an invoice from the landlord. *Montgomery Ward,* 268 F.3d at 207. Post-petition, the landlord sent tax invoices to the debtor for pre-petition tax years and for the tax year covering the filing.[2] *Id.* at 207. The

---

1. For example, in the Motion for Relief from Stay Heathcon admits that Debtor paid $2,553.52 as a pro rata payment for July and

August 2004 and later paid $1,276.76 for prorated taxes in September 2004.

2. The lease was for real property located in Illinois, where real property taxes are billed

Debtor did not pay the invoices for the pre-petition tax years. Further, it only paid for the pro-rata portion of taxes attributable to the period of the current tax year subsequent to Debtor's bankruptcy filing, taking the position that all taxes attributable to a pre-petition period constituted a general unsecured claim. *Id.*

The Third Circuit rejected the Debtor's approach, concluding that the Debtor's obligation to pay the taxes arose, under the plain meaning of Section 365(d)(3), at the moment there was a legally enforceable duty to perform under the lease, i.e. at the time of invoicing. *Id.* at 211. The Debtor's obligation to pay the entirety of the taxes arose when the Debtor was billed for the taxes post-petition, because the act of billing under the lease triggered the obligation for full payment of the invoices by Debtor. *Id.* at 212. *Montgomery Ward*

cites *In re Koenig Sporting Goods, Inc.*, 203 F.3d 986 (6th Cir.2000)("*In re Koenig*"), as the only other Circuit Court adopting the billing method.[3]

In contrast, the majority of courts addressing this issue have found that the term "obligations" is ambiguous in relation to the term "arising" under Section 365(d)(3), and they have found that an obligation may arise as it accrues. This approach is known as the accrual method. Courts following the accrual method find it to be the more equitable approach. Utilizing the accrual method results in a *pro rata* classification of the real property tax claim between a pre-petition and post-petition period, or over a post-petition, pre-rejection period. *See, e.g., Matter of Handy Andy Home Imp. Centers. Inc.*, 144 F.3d 1125, 1127 (7th Cir.1998).[4]

---

in arrears. The Debtor filed for bankruptcy on July 7, 1997. *Montgomery Ward*, 268 F.3d at 207. The Landlord invoiced Debtor post-petition on July 11, 1997 for 1996 taxes (due in 1997) and for 1997 taxes (billed under a lease provision allowing taxes to be billed as a security deposit for the payment of taxes). *Id.*

3. *In re Koenig* did not deal with real property taxes, as in this case, but rather monthly rent, requiring payment of full month's rent where the lease stated rent was due on the first of the month and the lease was rejected on the second. *In re Koenig*, 203 F.3d at 989. In utilizing the billing or due date rule, the Court emphasized that the Debtor had complete control over the obligation as it knew exactly when rent was due and could have moved to reject accordingly. *Id.* Thus, the Court held that "where the debtor had complete control over the obligation, [the Court] believe[s] that equity as well as the statute require full payment to [landlord]." *In re Koenig*, 203 F.3d at 989. Other cases analyzing *Koenig* have found that this language limits *Koenig* to its facts. *In re Ames Dept. Stores, Inc.*, 306 B.R. 43, 72 n. 105 (Bankr.S.D.N.Y.2004); *In re Phar–Mor, Inc.*, 290 B.R. 319, 327 (Bankr. N.D.Ohio 2003).

4. A third approach has been developed to address application of Section 365(d)(3) in

the specific context of breakpoint or percentage rent. *See In re Kmart Corporation*, 286 B.R. 345 (Bankr.N.D.Ill.2002)("*Kmart*"). In Kmart, the court rejected the billing method as ignoring the rehabilitative purposes of the Code and creating an inconsistency with the priority and distribution schemes of the Code. *Kmart*, 286 B.R. at 349, *citing In re Handy Andy*, 144 F.3d 1125 (7th Cir.1998). The court also rejected the accrual method, finding the method was best applied to non-contingent obligations, such as taxes. *Id.* at 350–51. Rather, given the fact that the obligation to pay percentage rent is not inevitable, as are real estate tax obligations, because it does not come into being until the breakpoint is reached, the court adopted a "breakpoint approach". *Id.* at 351. Under this rule, if the sales breakpoint is exceeded after the petition date, all percentage rent owing under the lease is recoverable under 365(d)(3), while if the breakpoint is exceeded pre-petition and the lease ends after the petition date, only the percentage rent from sales subsequent to the petition date is recoverable under 365(d)(3). *Id.* This breakpoint approach comports more closely to the accrual method rather than the billing method because it allocates the obligation among periods based on the reality of when during the year the obligation arises.

There is inherent ambiguity in the term obligations used in conjunction with the term arising in Section 365(d)(3). Obligations can be read to arise when billed or when accrued. This ambiguity is perhaps caused by the lack of a definition for the term obligation in the Bankruptcy Code. The term claim is defined as a "right to payment," determined "as of the date of the filing of the petition,...." 11 U.S.C. §§ 101(5), 502(b). An administrative expense is one which arises in connection with administration of the bankruptcy estate and, as such, arises after the petition is filed. *Id.* at § 503(b). An administrative expense is given a first priority status. *Id.* at § 507(a)(1). Although Section 365(d)(3) explicitly makes lease obligations arising post-petition payable without regard to whether they satisfy the specific tests for administrative expenses under Section 503(b)(1), *e.g.*, whether they are actual, necessary costs of preserving the estate, the section does not make an exception for the provisions of the Bankruptcy Code that deal with claims. If the term obligations is read to arise when billed, it may include obligations to pay taxes which cover prepetition periods. Such a reading conflicts with the treatment of prepetition claims by converting real property tax claims for prepetition periods to post-petition, first priority obligations. On the other hand, if the term obligations is read to arise when accrued, property tax obligations for pre- and post-petition periods are matched with each other. The latter resolution of the ambiguous term is thus more faithful to the general principles of the Bankruptcy Code for adjusting creditors' rights equitably.

Application of the accrual method is particularly appropriate for real property taxes in jurisdictions, such as Maryland, where taxes are billed in advance, because it allocates the annual property tax burden over the period of use by the debtor. If, on the other hand, the billing method was applied, the Debtor would be required to pay the entire year's taxes early in the fiscal year. If the Debtor subsequently exercised its right under 11 U.S.C. § 365(a) to reject the lease, it would have paid property taxes for a period it received no benefit from occupancy of the premises, while the landlord would be provided a windfall in the nature of full payment of taxes for the balance of the fiscal year. Both results would be at the expense of other creditors. A similar windfall for the landlord would result if the debtor were to terminate during the fiscal year as a result of dismissal or conversion of the case, sale of a debtor's business, or confirmation of a plan that did not utilize the premises for the debtor's business. A debtor in appropriate circumstances could create a windfall for itself at the expense of a landlord under the billing method by timing its filing of a case to convert a prospective real property tax obligation into a prepetition claim, rather than an administrative priority expense. These inequities are avoided by utilizing the accrual method for allocating real property taxes.

The opinion in *In re Phar–Mor, Inc.,* 290 B.R. 319, 324 (Bankr.N.D.Ohio 2003)(*Phar–Mor*) articulates the underpinning for the majority rule. In *Phar–Mor,* the nonresidential real property lease contained a provision requiring Debtor to pay taxes within 30 days of the date due or upon receipt by Debtor of a bill for the taxes, whichever was later.[5] *In re Phar–Mor,* 290 B.R. at 320. The landlord billed Debtor post-petition for taxes from the

---

5. Unlike *Montgomery Ward* the real property in *Phar–Mor* was located in Pennsylvania, where taxes are not billed in arrears but rather are assessed and due in the same year. *Phar–Mor,* 290 B.R. at 320.

year before Debtor's filing and the year of Debtor's filing. In adopting the accrual approach for determining the status of the various taxes, the Court explained:[6]

> The majority of courts to decide this general issue find § 365(d)(3) ambiguous as to when a debtor's "obligation" to reimburse a landlord for real estate taxes arises under a lease. The "obligation" may arise as it is accrued, or it may arise when the landlord submits the bill to the debtor-tenant.
>
> The ambiguity becomes evident when § 365(d)(3) is read in conjunction with the sections of the Bankruptcy Code that deal with "claims" and their treatment. Claim is defined as "right to payment ...." 11 U.S.C. § 101(5). A claim is determined as of the petition date. See 11 U.S.C. § 502(b). Obligation is not defined in the Bankruptcy Code. As one court explained the ambiguity:
>
> > If obligation were interpreted to refer to the entire amount that matures and becomes payable on a given date, without regard to whether any part of the amount accrued pre-petition, then ... § 365(d)(3) would conflict with, and constitute an exception to, the provisions governing claims. Section 365(d)(3) expressly indicates that it is meant to constitute an exception to the provisions of the Code governing administrative expenses, which are strictly post-petition in nature, but it does not state that it is meant to constitute an exception to the provisions governing claims. Therefore, without looking behind the language of the Code itself, one can fairly question whether Congress intended by § 365(d)(3) to require payment of

amounts that accrued pre-petition. The statutory language is inherently ambiguous; and courts are well justified in looking beyond it to understand the legislative intent.

*In re Learningsmith, Inc.*, 253 B.R. 131, 134 (Bankr.D.Mass.2000) (footnotes omitted). "Obligation" can conflict with the Bankruptcy Code provisions that govern claims as well as have conflicting definitions. A debtor's "obligation" under a nonresidential real property lease may arise as it is accrued, or it may arise when the landlord submits the bill to the debtor-tenant.

Basing its conclusion in the principles of equity, the accrual approach finds that a debtor's "obligation" under § 365(d)(3) arises as it is accrued. The Bankruptcy Code does not define when property taxes are "incurred" by a debtor's estate. The Sixth Circuit Court of Appeals has found that "a tax is incurred when it accrues and becomes a fixed liability." *White Plains, N.Y. v. A & S Galleria Real Estate (In re Federated Dept. Stores, Inc.)*, 270 F.3d 994, 1001 (6th Cir.2001) (citations omitted). Another bankruptcy court has held that "[a] tax is incurred on the date it accrues, not on the date of assessment or the date on which it is payable." *In re Bondi's Valu–King, Inc.*, 102 B.R. 108, 110 (Bankr.N.D.Ohio 1989) (internal quotes omitted). This is the same rationale as articulated in *Handy Andy Home Improvement Centers, Inc.*, 144 F.3d 1125 (7th Cir.1998). The Seventh Circuit Court of Appeals stated:

> But since death and taxes are inevitable and Handy Andy's obligation under the lease to pay the taxes was clear, that obligation could realistically

---

**6.** *Phar–Mor* also provides a comprehensive list of cases adopting the billing method and accrual method for determining when obli-

gations arise under Section 365(d)(3). *Phar–Mor*, 290 B.R. at 323–326.

be said to have arisen piecemeal every day of [the year] and to have become fixed irrevocably when, the last day of the year having come and gone, the lease was still in force.

*In re Handy Andy Home Improvement Centers., Inc.*, 144 F.3d 1125, 1127 (7th Cir.1998)(*Handy Andy*). A tax obligation, pursuant to the accrual approach, arises as it accrues; prorating the accrued obligation, then, is an equitable means of interpreting the ambiguity in § 365(d)(3).

The majority of courts finding the statute ambiguous also find that the legislative history supports this conclusion. The statute's legislative history explains that Congress sought only to ensure that a landlord received "current payment" for "current services." *See e.g., In re Child World, Inc.*, 161 B.R. 571, 575 (S.D.N.Y.1993). The majority of courts find that "[t]he legislative history provides compelling evidence that Congress did not intend § 365(d)(3) to include debtor-tenants' rental obligations arising prepetition, but billed postpetition." *Id.* at 574.

*In re Phar–Mor, Inc.*, 290 B.R. 319, 324–25 (Bankr.N.D.Ohio 2003).

The *Phar–Mor* court expressed concern that to follow the billing method would allow the landlord to manipulate the billing date for taxes and thus improve its priority. *Phar–Mor*, 290 B.R. at 326. Adopting the accrual method, the court found that the only taxes entitled to administrative priority were the prorated amount for taxes from the petition date to the date of rejection of the lease. *Id.; accord In re Trak Auto Corporation*, 277 B.R. 655 (Bankr.E.D.Va.2002), *rev'd on other grounds* (property taxes billed in arrears); *In re E–Z Serve Convenience Stores*, 2003 WL 21145800 (Bankr.M.D.N.C.2003)(taxes

billed post-petition but pre-rejection and covering pre-petition periods, post-petition pre-rejection period and post-rejection period); *In re Ames Department Stores, Inc.*, 306 B.R. 43 (Bankr.S.D.N.Y. 2004)(when lease rejected mid month rent to be pro-rated for the portion allocable to the pre-rejection period); *In re NETtel Corporation*, 289 B.R. 486 (Bankr.D.C. 2002)(same result in converted Chapter 11 case for post-conversion pre-rejection time frame); *In re Furr's Supermarkets, Inc.*, 283 B.R. 60 (10th Cir. BAP 2002)(rent, taxes and other lease obligations arise under Section 365(d)(3) as they accrue).

*Handy Andy* instructs that the accrual method applies to taxes regardless whether they are billed in arrears or in advance. The Court stated:

Suppose Cook County billed for taxes in advance, as the Internal Revenue Service does, and suppose the tax bill that Cook County sent [landlord] in September 1995 was for 1996 taxes. Under [landlord's] interpretation of section 365(d)(3), the entire bill would become a pre-petition debt if the order for relief in Bankruptcy was entered after November 1, since under that interpretation all bills payable before the date of the order are for pre-petition debts even if the bill is for the prepayment of services that will be rendered entirely in the post-petition period. We don't see the sense of that. Also notice that if [landlord] had transmitted the tax bill to [debtor] as soon as it received it in September, so that it was payable by October 1, rather than waiting until after [debtor] entered bankruptcy, the bill would have been for a pre-petition debt under [landlord's] theory. It may have delayed the transmission of the bill precisely to set the stage for the legal argument that it has

made to us. We don't see the sense of encouraging that sort of behavior either. *Matter of Handy Andy Home Imp. Centers, Inc.*, 144 F.3d at 1128–29.

This Court agrees with the rational and holding of *Handy Andy*.[7] While *Montgomery Ward* may provide a bright line rule, it will also promote the type of lawyering that should not be encouraged in our bankruptcy system. The billing method would prompt Maryland lessors to time their presentation of tax bills to tenants they anticipate might file bankruptcy in the hope of making the entire bill a post-petition priority expense, while prospective Debtors would time their bankruptcy filings based on the receipt of tax bills in order to render an entire years' tax obligation an unsecured pre-petition debt. Both behaviors are solely to obtain advantage and do nothing to preserve the relative positions of the parties on a level playing field while reorganizing. Neither contributes to the integrity of the system, and neither behavior should be promoted.

The better reasoned and more equitable approach, and the one prompted by the ambiguity contained in Section 365(d)(3), is the accrual method for the classification and treatment of Maryland real property taxes under nonresidential real property leases during the post-petition, pre-rejec-tion period of a Chapter 11 case.[8] The accrual method recognizes the substance of the property tax obligation and allocates it to the periods to which it applies. Consequently, the practice of Dunn Industries to pay the property taxes for the post-petition period on a monthly pro rata basis until the lease is assumed or rejected is all to which the landlord, Heathcon, is entitled. Because it appears that the Debtor is already paying the property taxes on a monthly pro rata basis, Heathcon's Motion for Relief from Stay will be denied.

Therefore it is, by the United States Bankruptcy Court for the District of Maryland,

ORDERED, that Heathcon Holdings, LLC's Motion for Relief from Stay is DENIED.

---

**7.** The Court of Appeals for the Fourth Circuit has not addressed this issue in a published opinion. In an unpublished opinion, citation of which is not favored [Loc.R. 36(c), (4th Cir.)], the Court utilized the billing method for real property rent that became due post-petition but related to pre-petition occupancy. However, annual property taxes were not at issue. *In re Rose's Stores, Inc.*, 1998 WL 393984 (4th Cir.1998) (Michael, J., dissenting).

**8.** This Court has previously interpreted when obligations, specifically monthly rent, first arise for personal property leases under 11 U.S.C. Section 365(d)(10). *See In re Furley's Transport, Inc.*, 263 B.R. 733 (Bankr.D.Md. 2001)(*In re Furley's*). That case addressed an entirely different section of the bankruptcy code with a different provision than at issue here, specifically when obligations "first arise" in personal property leases under 11 U.S.C. Section 365(d)(10). While *In re Furley's* adopted a due date approach for monthly rental obligations, it did not address the issue of payment of annual real property tax bills under 11 U.S.C. Section 365(d)(3). The Court's adoption of the accrual method for determining when real property tax obligations arise under 11 U.S.C. Section 365(d)(3) does not abrogate the Court's holding in *In re Furley's*.