# United States Bankruptcy Appellate Panel
## FOR THE EIGHTH CIRCUIT

---

No. 08-6026 NE

---

In re:                                          *
                                                *
Richard Burival, also known as Burival          *
Brother, a Partnership, et al.,                 *
                                                *
          Debtors.                              *
                                                *
Richard Burival, also known as Burival          *          Appeal from the United States
Brother, a Partnership, et al.,                 *          Bankruptcy Court for the
                                                *          District of Nebraska
          Appellants,                           *
                                                *
              v.                                *
                                                *
Creditor Committee, Committee of                *
Unsecured Creditors and Loretta                 *
Roehrich, Conservator of the Estate             *
of Rosie Pritchett, a protected person,         *
                                                *
          Appellees.                            *

No. 08-6027 NE

In re:                                    *
                                          *
Richard Burival, also known as Burival    *
Brother, a Partnership, et al.,           *
                                          *
         Debtors.                         *
                                          *
Loretta Roehrich,  Conservator of the     *    Appeal from the United States
of Rosie Pritchett, a protected person,   *    Bankruptcy Court for the
                                          *    District of Nebraska
         Cross Appellant,                 *
                                          *
              v.                          *
                                          *
Richard Burival, also known as Burival    *
Brother, a Partnership, et al.,           *
                                          *
         Cross Appellees,                 *
                                          *
Creditor Committee, Committee of          *
Unsecured Creditors,                      *
                                          *
         Appellee,                        *
                                          *
Richard D. Lange,                         *
                                          *
         Intervenor.                      *

Submitted: April 29, 2009
Filed: June 4, 2009

2

Before KRESSEL, Chief Judge, SCHERMER, and VENTERS, Bankruptcy Judges

SCHERMER, Bankruptcy Judge

Richard Burival and Phillip Burival, also known as Burival Brothers, a partnership and Gary Burival and Joyce Burival, also known as B & B Farms, and also known as Burival Farms (collectively "Debtors") appeal the bankruptcy court's order allowing an administrative expense claim to Loretta Roehrich, Conservator of the Estate of Rosie Pritchett ("Landlord"), for a prorated amount due under a crop land lease. The Landlord cross appeals the order, seeking payment of the full rent payment due after the order for relief was entered in the Debtors' bankruptcy cases but before the lease was rejected. We have jurisdiction over this appeal from the final order of the bankruptcy court. *See* 28 U.S.C. § 158(b). For the reasons set forth below, we reverse.

## ISSUE

This case involves the application of 11 U.S.C. § 365(d)(3) to a lease of crop land pursuant to which the Debtor tenants were required to make two lease payments per crop year, one of which had a due date two days after the orders for relief were entered in the Debtors' Chapter 11 cases. The Landlord seeks payment of the entire post-petition rent payment. The Debtors believe the entire rent amount was attributable to the growing season which ended pre-petition and should therefore be a pre-petition unsecured claim to which 11 U.S.C. § 365(d)(3) does not apply. The bankruptcy court calculated the annual rent on a daily basis and allowed the Landlord an administrative expense claim in an amount determined by multiplying the daily rent by the number of days between the entry of the order for relief in the Debtors' Chapter 11 cases and the date the lease was rejected. We must decide to what the Landlord is entitled under 11 U.S.C. § 365(d)(3). We conclude that the Landlord was entitled to payment of the entire post-petition rent payment under 11 U.S.C. § 365(d)(3) as an administrative expense claim.

3

# BACKGROUND

In March 2007, the Debtors entered into a three year lease of crop land and hay ground with the Landlord commencing March 1, 2007, and terminating February 28, 2010. For crop years 2007 and 2008, the annual rent was $166,129 with $75,329.78 due on April 1 of each year and $90,799.22 due on December 1 of each year.

On November 29, 2007, the Debtors filed petitions for relief under Chapter 11 of the Bankruptcy Code. The Debtors did not make the rent payment due on December 1, 2007. After failed attempts to obtain authority to use cash collateral, the Debtors rejected the lease on March 19, 2008.

The Landlord sought an administrative expense claim under 11 U.S.C. § 365(d)(3) for the $90,799.22 rent payment which was due on December 1, 2007. The Debtors opposed payment of any rent as an administrative expense, arguing that the December payment was for the 2007 crop year which ended pre-petition when the Debtors harvested their 2007 crop. Alternatively, the Debtors argued that the rent should be prorated between pre-petition and post-petition periods and that only that portion of rent attributable to the post-petition period should be entitled to administrative expense status. The Debtors further contended that any pro-ration of rent should take into account the fact that the leased property has a much greater value during the growing season than during the non-growing season and that such factor must be considered if the rent is prorated. The bankruptcy court calculated the annual rent on a daily basis, without differentiating between the growing and non-growing seasons, and awarded the Landlord a prorated administrative expense claim in the amount of $50,521.65, plus interest and attorneys' fees. The Debtors and the Landlord appeal the order awarding the Landlord the administrative expense claim.

4

**STANDARD OF REVIEW**

The facts are not in dispute. We review the bankruptcy court's interpretation of the bankruptcy code *de novo*. *Tri-State Fin., LLC v. First Dakota Nat'l Bank*, 538 F.3d 920, 923-24 (8th Cir. 2008); *Tri-State Fin., LLV v. Lovald*, 525 F.3d 649, 653 (8th Cir. 2008); *Hartford Underwriters Ins. Co. v. Magna Bank (In re Hen House Interstate, Inc.)*, 177 F.3d 719 (8th Cir. 1999), *aff'd*, 530 U.S. 1 (2000).

**DISCUSSION**

**I.      Section 365(d)(3) of the Bankruptcy Code**

Section 365(d)(3) of the Bankruptcy Code requires a trustee or a Chapter 11 debtor to timely perform all obligations of the debtor under an unexpired lease of nonresidential real property until such time as the lease is assumed or rejected. 11 U.S.C. § 365(d)(3).[1]  Courts generally agree that Section 365(d)(3) requires

---

[1] The full text of Section 365(d)(3) follows:

> The trustee shall timely perform all the obligations of the debtor, except those specified in section 365(b)(2), arising from and after the order for relief under any unexpired lease of nonresidential real property, until such lease is assumed or rejected, notwithstanding section 503(b)(1) of this title. The court may extend, for cause, the time for performance of any such obligation that arises within 60 days after the date of the order for relief, but the time for performance shall not be extended beyond such 60-day period. This subsection shall not be deemed to affect the trustee's obligations under the provisions of subsection (b) or (f) of this section. Acceptance of any such performance does not constitute waiver or relinquishment of the lessor's rights under such lease or under this title.

continued performance by Chapter 11 debtors and trustees under a lease of nonresidential real property until the lease is assumed or rejected. *See, e.g., Adelphia Bus. Solutions, Inc. v. Abnos*, 482 F.3d 602, 606 (2nd Cir. 2007); *Pacific Shores Dev., LLC v. At Home Corp. (In re At Home Corp.)*, 392 F.3d 1064, 1068 (9th Cir. 2004); *Bala v. Kaler (In re Racing Servs., Inc.)*, 340 B.R. 73 (B.A.P 8th Cir. 2006). Courts disagree as to what constitutes an obligation "arising from and after the order for relief" and, accordingly, diverge in their interpretation and application of Section 365(d)(3). Some courts view the language of the statute as clear and their job of applying the language as straightforward: any obligation of the debtor under the lease which becomes due after the entry of the order for relief under the Bankruptcy Code[2] and before the lease is assumed or rejected must be paid or otherwise fulfilled when due. *See, e.g.*, *HA-LO Indus., Inc. v. Centerpoint Props. Trust*, 342 F.3d 794, 797-800 (7th Cir. 2003); *Centerpoint Props. v. Montgomery Ward Holding Corp. (In re Montgomery Ward Holding Corp.)*, 268 F.3d 205, 208-12 (3rd Cir. 2001); *Koenig Sporting Goods, Inc. v. Morse Road Co. (In re Koenig Sporting Goods, Inc.)*, 203 F.3d 986, 989 (6th Cir. 2000); *In re Krystal Co.*, 194 B.R. 161, 163-64 (Bankr. E.D. Tenn. 1996). This view creates a bright-line test: if a rent payment is due during the post-petition, pre-rejection period, it must be paid pursuant to Section 365(d)(3).

Other courts interpret the language of Section 365(d)(3) as ambiguous and look elsewhere for guidance in concluding that obligations should be considered to arise when they accrue. *See, e.g.*, *Heathcon Holdings, LLC v. Dunn Indus., LLC (In re*

---

11 U.S.C. § 365(d)(3).

[2] In voluntary bankruptcy cases, which comprise the vast majority of cases, the filing of the petition constitutes the entry of the order for relief. Consequently the period after the entry of the order for relief is commonly referred to as the post-petition period. In involuntary cases, the term "post-petition" is technically incorrect because it includes the gap period between the filing of the petition and the entry of the order for relief. We use the term "post-petition" as it is commonly understood in the context of a voluntary case.

*Dunn Indus., LLC)*, 320 B.R. 86, 90 (Bank. D. Md. 2005); *In re Ames Dep't Stores, Inc.*, 306 B.R. 43, 65 (Bankr. S.D. N.Y. 2004); *In re Travel 2000, Inc.*, 264 B.R. 222 (Bankr. W.D. Mich. 2001); *see also In re Handy Andy Home Improvement Centers, Inc.*, 144 F.3d 1125 (7th Cir. 1998); *El Paso Props. Corp. v. Gonzales (In re Furr's Supermarkets, Inc.)*, 283 B.R. 60, 70 (B.A.P. 10th Cir. 2002); *Child World, Inc. v. Campbell/Massachusetts Trust (In re Child World, Inc.)*, 161 B.R. 571 (S.D. N.Y. 1993); *In re Nettel Corp., Inc.*, 289 B.R. 486 (Bankr. D.C. 2002).[3] These courts prorate rent payments into pre-petition and post-petition components and hold that Section 365(d)(3) only requires payment of the post-petition component. According to the courts which have adopted the accrual method of determining what obligations arise during the post-petition, pre-rejection period, the billing date methodology converts pre-petition obligations into post-petition obligations solely based on the timing of a bill or due date. *In re Handy Andy Home Improvement Centers*, 114 F.3d at 1128. Accrual courts find their approach more equitable because it is more faithful to the general principles of adjusting creditors' rights equally. *In re Furr's Supermarkets, Inc.*, 283 B.R. at 69 (the billing date "reading of § 365(d)(3) unravels the priority scheme of the Bankruptcy Code."); *In re Dunn Indus.*, 320 B.R. at 90. These courts also express concern about a debtor's ability to manipulate a billing date system by filing the day after rent is due, thus creating a windfall for the debtor at the expense of the landlord. *In re Dunn Indus.*, 320 B.R. at 90.

Interestingly, courts on both sides of the debate cite the scant legislative history as supporting their respective views. Section 365(d)(3) was enacted in 1984 as part of the "Shopping Center Amendments" to the Bankruptcy Code contained in the

---

[3]The disagreement among courts is most pronounced in the Seventh Circuit where the Seventh Circuit Court of Appeals has adopted the bright-line billing date approach in the context of monthly rent, *HA-LO Indus., Inc. v. Centerpoint Props. Trust*, 342 F.3d 794, 797-800 (7th Cir. 2003), and the accrual method in the context of an obligation to reimburse the landlord for property taxes, *In re Handy Andy Home Improvement Centers, Inc.*, 144 F.3d 1125 (7th Cir. 1998).

Bankruptcy Amendments and Federal Judgeship Act of 1984. Pub.L. No. 98-353, 98 Stat. 333 (1984). Congress passed the Shopping Center Amendments to protect the interests of commercial landlords who, compared to other creditors, were unfairly disadvantaged because they were forced to continue to provide current services to the debtor during the reorganization proceeding without payment and without the ability to re-rent the space to another tenant until after the debtor decided to assume or reject the lease. *In re At Home Corp.*, 392 F.3d at 1068 (citing 130 Cong. Rec. S8891 (1984), *reprinted in* 1984 U.S.C.C.A.N. 590, 598-99 (statement of Sen. Hatch). Prior to the enactment of Section 365(d)(3), in the event the debtor rejected the lease, the landlord only received the actual necessary costs and expenses of preserving the debtor's estate rather than the rent due under the lease. *Id*. The Shopping Center Amendments solved this problem by ensuring that Chapter 11 debtors continued to perform obligations under commercial leases, including the obligation to pay rent, notwithstanding the consideration of any benefit to the bankruptcy estate. *Id*. at 1068-69. Courts adopting the bright line billing approach see this history as further support for their clear reading of the statutory language. *In re Montgomery Ward Holding Corp.*, 268 F.3d at 210-11; *In re Koenig Sporting Goods, Inc.*, 203 F.3d at 989; *In re Krystal Co.*, 194 B.R. at 163-64. Courts who find the statute ambiguous look to this language for guidance in interpreting Section 365(d)(3). *In re Furr's Supermarkets, Inc.*, 283 B.R. at 66; *In re Child World, Inc.*, 161 B.R. at 574-76; *In re Ames Dep't Stores, Inc.*, 306 B.R. at 68-70.

We agree with those courts who read the statute as clearly requiring the debtor or trustee to perform all obligations as they become due. The language is clear: the debtor shall timely perform all obligations arising from and after the order for relief until the lease is assumed or rejected. Where the language of a statute is clear, our job is to enforce the language according to its terms. *Lamie v. U.S. Trustee*, 540 U.S. 526, 534 (2004); *Hartford Underwriters Ins. Co. v. Magna Bank*, 530 U.S. 1, 6 (2000).

The accrual courts worry that the billing date approach may give a landlord priority over other creditors with respect to obligations which accrue pre-petition but are not payable until post-petition. We acknowledge that the billing approach may have this effect in certain situations. That is exactly what Congress did when it enacted Section 365(d)(3) – it provided special treatment for non-residential landlords. Our interpretation of the statue is consistent with Congress' intent. The accrual courts similarly worry that a billing date approach provides the debtor with an opportunity to manipulate the system by timing its bankruptcy filing. A voluntary bankruptcy petition by its very nature creates a bankruptcy estate as of the commencement of the case. 11 U.S.C. § 541(a). The Debtor becomes a fiduciary for creditors and loses the ability to pay pre-petition debts without authority from the Bankruptcy Code or the court. Debtors contemplating a bankruptcy filing must take into consideration numerous factors in timing their petitions. Lease obligations are merely one more factor to consider in determining when to file a bankruptcy petition.

The billing date approach is more extreme in a crop land lease situation where rent is payable once or twice a year versus the standard commercial lease under which rent is generally paid monthly. Nonetheless, we are constrained to follow the language of Section 365(d)(3) which applies to all unexpired leases of nonresidential real property including crop leases.

Section 365(d)(3) required the Debtors to make the rent payment in the amount of $90,799.22 on December 1, 2007. To the extent the bankruptcy court prorated the Landlord's claim into pre-petition and post-petition components, we reverse.[4]

_____

[4] The Debtors argue that the bankruptcy court's allocation of rent evenly over the course of the year is improper because it fails to take into account the divergent value of the land during the growing season versus the non-growing season. We agree that the valuation of a crop land lease must consider the fact that reasonable rent is not constant throughout the calendar year. *Reiuter v. Fokkena (In re Wedemeier)*, 237 F.3d 938, 941 (8th Cir. 2001). However, this argument is

## II.    Unpaid Rent Payment Becomes a Claim Under Section 101(5) of the Bankruptcy Code

The Debtors failed to make the $90,799.22 rent payment due December 1, 2007.  Upon the Debtor's failure to make the payment, the rent obligation became a claim against the Debtor's bankruptcy estate under Section 101 of the Bankruptcy Code.  11 U.S.C. § 101(5).[5]  The term "claim" includes any right to payment.  The Landlord had the right to be paid the $90,799.22; hence the rent obligation is a claim under the Bankruptcy Code.

_____

irrelevant because we hold that proration of the claim is not warranted by the statute.  Furthermore, we note that the *Wedemeier* case was decided under Section 503(b)(1) of the Bankruptcy Code without mention of Section 365(d)(3).

[5] Section 101(5) states as follows:

> (5) The term "claim" means--
>
> (A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or
>
> (B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

11 U.S.C. § 101(5).

### III.    The Status of the Landlord's Claim for the Unpaid December Rent

We must now decide how to treat the Landlord's claim for the unpaid December rent. Courts again disagree on this issue. The debate focuses on the phrase "notwithstanding section 503(b)(1) of this title" contained in Section 365(d)(3). Some courts hold that Section 365(d)(3) imposes administrative expense status on claims for post-petition, pre-rejection lease obligations. *See, e.g.*, *Cukierman v. Uecker (In re Cukierman)*, 265 F.3d 846, 850 (9th Cir. 2001); *Towers v. Chickering & Gregory (In re Pacific-Atlantic Trading Co.)*, 27 F.3d 401, 405 (9th Cir. 1994); *El Paso Props. Corp. v. Gonzales (In re Furr's Supermarkets, Inc.)*, 283 B.R. 60, 69 (B.A.P. 10th Cir. 2002). By providing for timely performance of all lease obligations during the post-petition, pre-rejection period **notwithstanding Section 503(b)(1)**, the statute has already granted priority payment status to such obligations and eliminated the need for the landlord to prove any benefit to the bankruptcy estate to obtain such elevated status. *Pacific-Atlantic Trading*, 27 F.3d at 404. A debtor's failure to comply with this duty should not justify denying the landlord the priority treatment bestowed upon such claims by Section 365(d)(3). *Id.* at 405. To hold otherwise would reward a debtor's disobedience of a statutory mandate at the expense of the landlord. The granting of priority status to the landlord's unpaid post-petition, pre-rejection lease claims is the only result consistent with the mandate of Section 365(d)(3). *Id.*

Other courts have interpreted Section 365(d)(3) as silent on the subject and, therefore, not a legislative mandate conferring administrative expense status on post-petition, pre-rejection claims. *See, e.g.*, *Great W. Sav. Bank v. Orvco, Inc. (In re Orvco, Inc.)*, 95 B.R. 724, 727 (B.A.P 9th Cir. 1989).[6] Under this theory, without express authority to elevate the claim to administrative expense status, the claim must

---

[6]The Ninth Circuit Court of Appeals rejected this argument in *Pacific-Atlantic Trading Co.*, 27 F.3d at 404-05.

11

be an unsecured non-priority claim unless the Landlord can establish an entitlement to priority status under Section 503(b)(1) of the Bankruptcy Code.

We agree with the majority of courts which conclude that Section 365(d)(3) provides administrative expense status to post-petition, pre-rejection claims under leases of non-residential real property. Section 503(b)(1) of the Bankruptcy Code provides for the allowance of administrative expenses including the actual necessary costs and expenses of preserving the estate and certain taxes and related penalties and fines. 11 U.S.C. § 503(b)(1). In order to obtain administrative expense status under Section 503(b)(1), a claimant must demonstrate that its claim was an actual and necessary cost or expense of preserving the bankruptcy estate. This test generally requires proof of a benefit to the bankruptcy estate. Section 365(d)(3) excludes post-petition, pre-rejection obligations under leases of nonresidential real property from the cost-benefit analysis used to determine if an expense is an actual necessary cost or expense of preserving the debtor's bankruptcy estate and instead guarantees payment of post-petition, pre-rejection obligations regardless of any benefit to the debtor or its estate. *In re At Home Corp.*, 392 F.3d at 1068-69. To hold that Section 365(d)(3) does not confer administrative expense status to post-petition, pre-rejection claims would defeat the spirit and letter of Section 365(d)(3): post-petition, pre-rejection claims must be paid when due.

We disagree with the argument that Section 365(d)(3) is merely a powerful weapon in a landlord's arsenal and not a grant of administrative priority status. While it is true that the landlord may seek relief from the automatic stay, move to dismiss a case, or seek an immediate assumption or rejection of a lease, none of these alternatives is designed to result in the payment of post-petition rent obligations which the debtor is required to pay. The dissent notes that the landlord may ask for an order directing the debtor to pay post-petition rent. That is exactly what the Landlord has done. We believe Section 365(d)(3) provides the necessary authority to impose administrative expense status on the Landlord's claim.

## CONCLUSION

The Debtors were obligated to make the full $90,799.22 rent payment due the Landlord on December 1, 2007. The Debtors' failure to comply with this obligation resulted in a claim by the Landlord for the full amount of the December rent payment which is entitled to priority payment status. The order of the bankruptcy court which prorated the unpaid December rent payment into pre-petition and post-petition components is reversed.

KRESSEL, Chief Judge, dissenting.

I agree with the majority on two of the three issues it decided. I agree that the contractual requirement to make the second lease payment is an obligation of the debtor that arose after the order for relief. As such, 11 U.S.C. § 365(d)(3) required the debtor to timely make the rent payment on December 1, 2007, in the amount of $90,799.22. I also agree that since § 365(d)(3) gives the landlord a right to payment, § 101(5)(a) gives her a claim for that amount.

I disagree with the majority, however, that the landlord's claim is entitled to any priority, since Congress has given it none. The Bankruptcy Code has an elaborate system for dealing with claims. We have already seen that "claim" is a term defined in § 101(5). The priority of claims, however, is determined by § 507. Any party, including the landlord in this case, who claims priority over the claims of others must find a provision of § 507(a) that gives it such priority. The landlord relies on § 507(a)(2) which grants a second priority to "administrative expenses" allowed under § 503(b). Section 503(b) itself has a long list of expenses that are included in the description "administrative expenses." Obviously none of the iterated examples obtains. The landlord instead relies on the generalized introductory language "the actual, necessary costs and expenses of preserving the estate." Unfortunately for the

13

landlord, it is well settled law that the amount of a rent payment that is entitled to priority under this section is limited to the benefit enjoyed by the estate which may be more, less, or the same as the rent for the period that the land is occupied, which is a factual issue to be determined by the bankruptcy court. *See Wedemeier v. Fokkena(In re Wedemeier)*, 237 F.3d 938 (8th Cir. 2001). This is an appropriate standard, since the only amount for which Congress granted an administrative expense priority is for necessary costs and expenses of *preserving* the estate. In my mind, this should be the end of the inquiry.

The landlord points to no provision of § 503(b) by which Congress granted her an administrative expense priority nor is there any provision in the § 365(d)(3) or anywhere else which grants her such a priority. The landlord makes three related arguments in her attempt, successful it seems, to convince us to create a priority claim for her, in spite of the fact that Congress has not.

First, she argues that somehow the requirement to pay would be meaningless unless the failure to pay resulted in a priority claim. However, that is plainly not true. The obligation by the debtor or the trustee to pay is a powerful weapon in a landlord's arsenal. For example, it can go to the bankruptcy court and ask it to order the debtor to pay; it can ask for relief from the automatic stay, alleging that the failure to pay constitutes cause under § 362(d); it can move to dismiss the case under § 1112(b); it can argue for a shortening of the period in which the debtor is allowed to assume or reject the lease; and it can object to the debtor's request to extend the time for it to assume or reject. However, like most rights granted creditors, they must be exercised to be effective. What a landlord cannot do is allow time to run and then assert a large priority claim at the expense of other creditors, some of whom have congressionally granted priority claims.

Second, the landlord argues that giving her a priority claim would be consistent with congressional intent. With all due respect, there is no legislative history from

which to determine congressional intent:  the statement of one member of Congress on the floor is <u>not</u> legislative intent.  In any case, the best way to determine congressional intent is from the statute.  As part of what are commonly referred to as the shopping center amendments, Congress made a number of amendments favorable to landlords.  If it had wanted to grant landlords a priority claim for the obligation that it created under § 365(d)(3), it could easily have done so but did not.

Last, the landlord relies heavily on the last clause of the first sentence of § 365(d)(3): "notwithstanding section 503(b)(1) of this title."  Somehow, the landlord reads this to be an override of § 503.  Actually, it is quite to the contrary.  It is an acknowledgment that a landlord's administrative expense claim is limited to the extent that it benefitted or preserved the estate, but requires the payment of full rent and performance of other obligations anyway.  In this regard, I agree with the Ninth Circuit Bankruptcy Appellate Panel when it said "in our view, the language of § 365(d)(3), 'notwithstanding § 503(b)(1)' means that notwithstanding the administrative or nonadministrative status of a claim by a lessor, the bankruptcy court must order its payment pending assumption or rejection.  It does not mean that the necessity for showing the reasonableness of the rent or any of the other factors considered under § 503(b)(1)(A) has been completely abrogated." *Great Western Sav, Bank v. Orvco, Inc. (In re Orvco, Inc.)*, 95 B.R. 724 (B.A.P. 9th Cir. 1989).   I realize that the bankruptcy appellate panel's opinion in *Orvco* has been overruled by the Ninth Circuit Court of Appeals, *Towers v. Chickering & Gregorgy (In re Pacific Atlantic Trading Co.)*, 27 F.3d 401 (9th Cir. 1994).  However, that means only that *Orvco* is not the law in the Ninth Circuit, not that it was wrong.  The Ninth Circuit said "the granting of administrative priority for this period is consistent with the intent of section 365(d)(3) and necessary to carry out its objectives."  *Id.* at 405. As noted, there is no way of knowing the intent of § 365(d)(3) other than reading it nor, as we have seen, is it necessary to carry out its objectives. Congress apparently wants shopping center lessees to pay for ongoing services that the shopping center was required to provide lessees.

That goal is not necessarily advanced by giving the landlord a large after-the-fact priority claim.

So, what is the landlord's administrative expense claim?  It is not the per diem computation that was done by the bankruptcy court.  The administrative expense claim must be determined under the standards of § 503(b)(1).  In making that determination, the Eighth Circuit has acknowledged that, while contractually rent might be payable in equal payments over a certain period of time, the value of the property to the estate may differ over time.  This is especially true in farm cases.  Under the Eighth Circuit's opinion in *Wedemeier*, the bankruptcy court should have determined the reasonable rental rate of the property from the date that the case was filed until the lease was rejected. *Wedemeier*, 237 F3d 938.

---